932 P.2d 275

**The STATE of Arizona, Appellee,**

**v.**

**Miguel Angel BALDENEGRO, Appellant.**

**No. 2 CA–CR 95–0561.**

Court of Appeals of Arizona, Division 2, Department B.

Sept. 19, 1996.

Redesignated as Opinion and Publication Ordered Nov. 1, 1996.

As Corrected Dec. 19, 1996.

Review Denied Feb. 26, 1997.

**12**

Grant Woods, Attorney General by Paul J. McMurdie and Jon G. Anderson, Phoenix, for Appellee.

Anthony J. Abruzzo and Melissa Errico, Tucson, for Appellant.

## OPINION

DRUKE, Chief Judge.

Appellant Miguel Baldenegro appeals from his convictions of three counts of drive-by shooting (counts one, two, and three; A.R.S. § 13–1209(A),(B)), three counts of aggravated assault (counts four, five, and six; § 13–1204(A)(2), (B)), and one count each of assisting a criminal syndicate (count seven; § 13–2308(C),(F),(H)), and participating in a criminal street gang (count seventeen; § 13–2308(A)(2),(G),(H)). The jury also found the drive-by shooting and aggravated assault offenses were of a dangerous nature. The trial court sentenced Baldenegro to concurrent, mitigated prison terms, the longest being seven years. We affirm in part and reverse in part.

## BACKGROUND

We view the evidence in the light most favorable to sustaining the verdicts. *State v. Zmich*, 160 Ariz. 108, 770 P.2d 776 (1989). In late 1994, Cesar Valdez, the leader of a gang known as "Carson 13," was shot to death. Gang members blamed Lizette Parra for facilitating the murder. One day in early 1995, Baldenegro and Israel Gamez, both Carson 13 members, stopped to buy a hammer at a Tucson store, where they saw Parra standing outside. According to Baldenegro, he did not recognize Parra until Gamez pointed her out as "the girl that set up Cesar Valdez." Baldenegro, Parra testified, came right up to her and, in gang parlance, "mad-dogged" her, or stared at her intently, which Parra said intimidated her because she recognized a Carson 13 tattoo on Baldenegro's shaved head and knew the gang's opinion of her. Baldenegro agreed his tattoo had been clearly visible to Parra, but he denied having stared at her. He said he looked at her as he walked into the store, and did not come within 15 feet of her.

While Baldenegro was in the store, Parra left with her friends Peter Olguin and Joseph Flowers in the latter's car. Baldenegro stated he paid for the hammer, went outside to where Gamez had been waiting, and they left in Gamez's car, with Gamez driving. Baldenegro said that when he and Gamez realized they were following Flowers's car, Gamez pulled the car up to Flowers's, rolled down his window, stared at Parra, then slowed the car down. He stated that Gamez then pulled up to Flowers's car again, suddenly yanked out a handgun, pointed it at Flowers's car, and fired several shots.

Parra testified that Gamez's car twice came up alongside her, but that Baldenegro, not Gamez, was driving. While Parra agreed she did not actually see who fired the shots, she said she saw something "like a flame" come from the driver's side of Gamez's car and heard gunfire. She also said that, when the shooting began, Flowers slammed on the brakes so hard that he, Olguin, and Parra were thrown to the floor.

A witness to the shooting, Joel Valdez, identified Gamez as the driver and shooter, and Baldenegro as the passenger. Valdez said Baldenegro appeared surprised by the shooting.

Several weeks after the shooting, a grand jury indicted Baldenegro, Gamez, and two other Carson 13 members for a series of gang-related acts, including the offenses in this appeal. The trial court granted Baldenegro's motion to sever his trial from the others'.

## DISCUSSION

### a. Accomplice liability instruction

 Baldenegro first contends the trial court improperly instructed the jury on accomplice liability. An accomplice instruction should be given only if reasonably supported by the evidence. *State v. Marlow,* 163 Ariz. 65, 786 P.2d 395 (1989). Here, even if the jurors believed that Baldenegro drove the car and Gamez fired the shots, they could have reasonably concluded from the way Baldenegro drove the car that he "agree[d] to aid or attempt[ed] to aid" Gamez commit the offenses and was guilty as an accomplice.

A.R.S. § 13–301(2). We thus conclude the jury was properly instructed.

### b. Absence of witness's testimony

The trial court denied Baldenegro's motion for a directed verdict of acquittal on counts four and five, which charged aggravated assaults against Flowers and Olguin, respectively. Baldenegro contends the ruling was error, arguing a lack of evidence. Flowers and Olguin did not testify at trial and their statements to police were not introduced.

 A judgment of acquittal, made pursuant to Rule 20, Ariz. R.Crim. P., 17 A.R.S., is appropriate when no substantial evidence supports a conviction. *State v. Nunez,* 167 Ariz. 272, 806 P.2d 861 (1991).

> To be guilty of aggravated assault, "the defendant need only intentionally act using a deadly weapon or dangerous instrument so that the victim is placed in reasonable apprehension of imminent physical injury." Either direct or circumstantial evidence may prove the victim's apprehension. There is no requirement that the victim testify to actual fright.

*State v. Wood,* 180 Ariz. 53, 66, 881 P.2d 1158, 1171 (1994), *quoting State v. Valdez,* 160 Ariz. 9, 11, 770 P.2d 313, 315 (1989). Here, ample evidence supports the conclusion that Flowers was apprehensive or in fear of imminent injury. Parra and Valdez each testified that, when the shooting began, Flowers braked his car so abruptly that he and his passengers pitched forward to the floor. From this, a jury could reasonably infer that Flowers acted out of fear or apprehension to the shooting. We therefore affirm count four.

 We reach a different conclusion, however, regarding count five because the record is devoid of evidence from which the jury could conclude Olguin was "placed in reasonable apprehension of imminent physical injury." No evidence was presented that Olguin saw a gun pointed at him or at the car before the shooting. Moreover, the evidence does not suggest that Olguin, like Parra, saw bursts of flame from the driver's side of Gamez's car. Further, the evidence failed to show that Olguin, unlike Flowers, reacted to

the shooting, either by trying to maneuver to avoid getting shot or by crying out. We reject the state's contention that Olguin's mere presence in a car at which someone fired shots is sufficient circumstantial evidence of his apprehension or fear.[1] We conclude therefore that the trial court erred by refusing to direct a judgment of acquittal on count five and reverse Baldenegro's conviction on that count.

### c. Confrontation

■ Baldenegro also argues that his right of confrontation guaranteed by the Sixth Amendment was violated because Flowers and Olguin did not testify. Baldenegro has waived this argument because he failed to raise it below. *See State v. Bible*, 175 Ariz. 549, 858 P.2d 1152 (1993), *cert. denied*, 511 U.S. 1046, 114 S.Ct. 1578, 128 L.Ed.2d 221 (1994).

### d. Gang statute

Baldenegro next argues that A.R.S. §§ 13–105(7) and (8) are unconstitutional. The statutes provide as follows:

§ 13–105. Definitions

\* \* \* \* \* \*

7. "Criminal street gang" means an ongoing formal or informal association of persons whose members or associates individually or collectively engage in the commission, attempted commission, facilitation or solicitation of any felony act and who has at least one individual who is a criminal street gang member.

8. "Criminal street gang member" means an individual to whom two of the following seven criteria that indicate criminal street gang membership apply:

(a) Self-proclamation.

(b) Witness testimony or official statement.

(c) Written or electronic correspondence.

(d) Paraphernalia or photographs.

(e) Tattoos.

(f) Clothing or colors.

(g) Any other indicia of street gang membership.

Baldenegro contends that the statutes are vague and overbroad.[2] He argues that they "allow for anyone who is a member of any ascertainable group to be charged with participating in or assisting a criminal street gang if *any member of that group has individually engaged in felonious activity.*" (Emphasis in original.) The state answers that Baldenegro lacks standing to challenge these statutes, and we agree.

■ "A defendant whose conduct is clearly proscribed by the core of the statute has no standing to attack the statute. 'One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.'" *State v. Tocco*, 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988), *quoting Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974). *See also Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 494–95, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others"). Here, although these statutes do not clearly proscribe conduct, they provide definitions that must be proved to obtain convictions for other crimes. Like the defendant in *Tocco*, however, Baldenegro "nowhere . . . claim[s] that *his* potentially innocent conduct is being prosecuted." *Tocco*, 156 Ariz. at 119, 750 P.2d at 877. We therefore conclude that he lacks standing to contest the statutes' constitutionality. *See State v. McCoy*, 187 Ariz. 223, 928 P.2d 647 (Ct.App.1996) (because statute applied to defendant's conduct, he had no standing to complain that the statute infringed on the rights of others).

■ In any event, Baldenegro's constitutional arguments fail. Contrary to his con-

---

1. We note, however, that the evidence is sufficient to sustain count two, the drive-by shooting conviction. That crime requires no proof of the victim's apprehension or fear.

2. Baldenegro included this argument in a pretrial motion that addressed admissibility of evidence. We can infer from the trial court's admission of the evidence that it rejected the constitutional argument.

tentions, these statutes do not criminalize mere association with others or even gang membership. Instead, they provide definitions so that a judge or jury may determine whether the offenses of participating in or assisting a criminal syndicate were committed "to promote, further or assist any criminal conduct by the gang. . . ." § 13–2308(F) and (G).

### e. Evidence

Finally, Baldenegro argues that the trial court abused its discretion when it admitted evidence of gang activity by other members of Carson 13. We find no error.

Counts seven and seventeen alleged that Baldenegro committed the offenses of assisting and participating in a criminal syndicate for the benefit of a criminal street gang. Both allegations required the state to prove that Carson 13 was a criminal street gang, as defined by A.R.S. § 13–105(7). To do so, the state called Officer Cuestas as an expert witness.

Cuestas testified that Carson 13 was comprised of gang members, as defined by § 13–105(8), and that the gang had committed "everything from drive-by shootings, to aggravated assaults, to threats of violence, to fights, to disorderly conduct type activity and some particular narcotic behavior, narcotic activity, things of that nature." Pursuant to a pretrial ruling, Cuestas was not permitted to mention specific names and instances unless "a foundational objection [was] made or [was] needed to answer a question on cross-examination."

Cuestas based his opinions on personal observations and experience, the observations of other officers in the department, police reports, and conversations with other gang members. He also identified several photographs of Carson 13 members, including Baldenegro, "throwing gang signs" and otherwise displaying their affiliation with Carson 13.

■ Baldenegro complains that Cuestas should have been precluded from testifying about incidents in which he, Baldenegro, was not involved. He contends the trial court should have excluded the evidence under Rules 402, 403, and 404(b), Ariz. R. Evid., 17A A.R.S. Because the trial court has broad discretion in ruling on evidentiary matters, we will not reverse its ruling unless clearly erroneous. *State v. Salazar*, 181 Ariz. 87, 887 P.2d 617 (App.1994).

■ Rule 402 allows the admission of "[a]ll relevant evidence," which Rule 401 defines as

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

By this definition, evidence of Carson 13's criminal activity was relevant to show it was a criminal street gang, a "fact that is of consequence to the determination of the action."

■ Baldenegro nevertheless contends the trial court should have excluded the evidence pursuant to Rule 403 because "its probative value [was] substantially outweighed by the danger of unfair prejudice." He claims that by admitting the evidence, "the jury could have easily decided that regardless of whether [he] committed the charges brought in the present case, he associated with a gang that had committed crimes in the past, and therefore, he should pay the price now." We reject this claim not only because it is speculative but also because we cannot say the trial court clearly abused its discretion in balancing the evidence's probative value against its prejudicial effect. *Salazar*. The evidence had substantial probative value because it provided an essential element of proof that Carson 13 was a criminal street gang, and the trial court limited its prejudicial effect by excluding testimony of specific names and instances of criminal conduct by Carson 13's members.

■ Baldenegro alternatively argues the evidence should have been excluded based on Rule 404(b). We disagree. As the Advisory Committee Notes to the equivalent federal rule point out, Rule 404(b) "does not extend to evidence of acts which are 'intrinsic' to the charged offense." Fed.R.Evid. 404 advisory committee's note. " 'Other act' evidence is 'intrinsic' when the evidence of the other act and evidence of the crime charged are 'inextricably intertwined' or both acts are part of a 'single criminal episode' or the other acts were 'necessary preliminaries' to

the crime charged." *United States v. Williams,* 900 F.2d 823, 825 (5th Cir.1990). *See also United States v. Coleman,* 78 F.3d 154 (5th Cir.1996), petition for cert. filed June 13, 1996 (No. 96–5304); *United States v. Swinton,* 75 F.3d 374 (8th Cir.1996). Here, the other acts evidence is intrinsic because it is "inextricably intertwined," as noted above, with the crimes charged in counts seven and seventeen, assisting and participating in a criminal syndicate for the benefit of a criminal street gang.

Baldenegro finally argues that A.R.S. § 13–105(7) limits the other act evidence to felony acts committed by the gang and, therefore, he was prejudiced by Cuestas's testimony regarding its possible misdemeanor activity. However, Baldenegro failed to object to this testimony in the trial court and has therefore waived the issue on appeal. *See State v. Gonzales,* 181 Ariz. 502, 892 P.2d 838 (1995).

In reviewing this appeal, we found no fundamental error. Baldenegro's conviction on count five is reversed; the remaining convictions are affirmed.

ESPINOSA, P.J., and HATHAWAY, J., concur.