955 P.2d 35

STATE of Arizona, Appellee,

v.

Rafael TORRES–MERCADO, Appellant.

No. 1 CA–CR 96–0770.

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 20, 1997.

Review Denied May 19, 1998.

Grant Woods, Attorney General by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Jack Roberts, Assistant Attorney General, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by Carol A. Carrigan, Deputy Public Defender, Phoenix, for Appellant.

## OPINION

KLEINSCHMIDT, Judge.

The Defendant, Rafael Torres–Mercado, was charged with two counts of drive-by shooting and two counts of misconduct involving weapons, the latter committed by discharging a firearm at an occupied structure in furtherance of the interests of a criminal street gang. A jury found him guilty on all charges, and he was sentenced to prison. We affirm.

In the early morning hours of a day in August 1995, the Defendant, while riding with friends in a car, and allegedly motivated by revenge and resentment, fired a gun at an occupied trailer home and at an occupied house. After receiving a tip from an eyewitness, the police searched the Defendant's home and found the rifle that later tests would prove had been used in the crime. The Defendant admitted to police that he was affiliated with the "W", a group otherwise known as the Chandler Wetback Power Gang, and that he had fired the shots. He later disavowed his confession and denied that he was the person who discharged the weapon.

## THE DEFENDANT LACKS STANDING TO CHALLENGE THE CONSTITUTIONALITY OF THE STREET GANG STATUTE

Arizona Revised Statutes Annotated ("A.R.S.") section 13–3102(A)(1) through (13) (Supp.1996) describes a variety of conduct which constitutes the crime of misconduct with a weapon. Subsection 9 provides that the crime can be committed by:

> Discharging a firearm at an occupied structure in order to assist, promote or further the interests of a criminal street gang, a criminal syndicate or a racketeering enterprise....

The term "criminal street gang" is defined in A.R.S. section 13–105(7) (Supp.1996). It means:

> an ongoing formal or informal association of persons whose members or associates individually or collectively engage in the commission, attempted commission, facilitation or solicitation of any felony act and who has at least one individual who is a criminal street gang member.

The term "criminal street gang member" is defined in A.R.S. section 13–105(8) (Supp. 1996) as the following:

[A]n individual to whom two of the following seven criteria that indicate criminal street gang membership apply:

(a) Self-proclamation.

(b) Witness testimony or official statement.

(c) Written or electronic correspondence.

(d) Paraphernalia or photographs.

(e) Tattoos.

(f) Clothing or colors.

(g) Any other indicia of street gang membership.

Misconduct involving weapons under subsection 9 of the statute is a class 3 felony, which is a more serious crime than some other forms of the same offense. *See* A.R.S. § 13–3102(J) (Supp.1996).

Just before trial, the Defendant's counsel orally moved, without citing any authority, to dismiss the misconduct involving weapons counts on the grounds that A.R.S. sections 13–105(7) and (8) were unconstitutional. The motion was untimely. *State v. Lee*, 25 Ariz.App. 220, 222–25, 542 P.2d 413, 415–18 (1976) (stating that Ariz. R.Crim. P. 16.1(b) requires that constitutional objections be raised at least twenty days before trial). The trial court denied the motion, both because it was untimely and on the merits.

The Defendant argues that the statutes defining "criminal street gang member" and "criminal street gang" are unconstitutionally vague and overbroad and that they improperly infringe on freedom of expression and rights of assembly.[1] He develops the vagueness argument by saying that the statute does not provide fair notice of prohibited behavior and allows arbitrary or discriminatory enforcement. As an example, he claims the statute could be used to find that the Arizona Cardinals or the Phoenix Police Department are criminal street gangs if one of their members attempts or commits a felony. The State urges that the Defendant has no standing to make this argument.

A defendant whose conduct is clearly proscribed by the core of a statute does not have standing to attack it on the basis that it is unconstitutionally vague. *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 2561–62, 41 L.Ed.2d 439 (1974). A person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." *Village of Hoffman Estates v. Flipside*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982).

The purpose of the street gang statute is obvious. It is to curb the activity of people who band together for the purpose of committing crimes. *See Hearing on S.B. 1291 Before the Senate Appropriations Comm.*, 41st Legis., 2nd Reg. Sess. 8 (Apr. 5, 1994). The Defendant admitted to the police that he was a member of the Chandler Wetback Power Gang, and an expert on gangs testified at trial and identified photographs of the Defendant "throwing" gang signs. There was no suggestion but that the Chandler Wetback Power Gang was the type of organization at which the statute was aimed. The Defendant's examples of how the statute might sweep in members of other organizations when one of their members commits a crime does not apply to him. Thus, the Defendant lacks standing to challenge the statute on the basis that it is vague.

The Defendant next argues that the statute is so vague and overbroad that it infringes on the First Amendment rights of free speech and the right of assembly. He claims that certain forms of legitimate ex-

---

1. We see a potential question concerning A.R.S. section 13–105(8), which the parties have not raised or discussed. That subsection provides that a person is a criminal street gang member if he meets any two of seven listed criteria. If the statute is interpreted to quantify the proof needed to convict, as opposed to establishing the elements of a crime, it may impinge on the exclusive responsibility of the judiciary to govern the rules of evidence. *See State v. Fowler*, 156 Ariz. 408, 410–11, 752 P.2d 497, 499–500 (App. 1987); *In re the Matter of One (1) Rolex Brand Man's Watch*, 176 Ariz. 294, 298, 860 P.2d 1347, 1351 (App.1993). Courts will, however, recognize reasonable and workable statutory arrangements when the same do not conflict with the rules and powers of the judiciary. *State ex rel. Collins v. Seidel*, 142 Ariz. 587, 591, 691 P.2d 678, 682 (1984). The application of the statute presents no irreconcilable problem in this case, so we need not pursue this avenue further.

pression, such as tatoos, electronic correspondence, and colors are prohibited by the statute. *Id.* In addition, he claims that the "ongoing formal or informal association" language in A.R.S. section 13–105(7) violates the right of assembly. *Id.* Again, the State asserts that the Defendant does not have standing to make this argument.

▉ There is an exception to the rule that one cannot challenge a statute on the grounds that it is unconstitutional as applied to others for claims that the statute abridges the First Amendment. *New York v. Ferber,* 458 U.S. 747, 767, 102 S.Ct. 3348, 3359–60, 73 L.Ed.2d 1113 (1982); *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 59, 96 S.Ct. 2440, 2446–47, 49 L.Ed.2d 310 (1976). The exception is based on the belief that "some statutes may cause persons not before the Court to refrain from engaging in constitutionally protected speech" or may inhibit their right of assembly. *Young v. American Mini Theatres, Inc.,* 427 U.S. at 60 n. 17, 96 S.Ct. at 2447 n. 17. This exception applies, however, only if the deterrent effect on legitimate expression and assembly is both "real and substantial". *Id.* at 60, 96 S.Ct. at 2447.

In *State v. Ochoa,* 189 Ariz. 454, 457–58, 943 P.2d 814, 817–18 (App.1997), we held that A.R.S. sections 13–105(7) and (8) do not have a "real and substantial" effect on the right of free speech and free assembly. In *State v. Baldenegro,* 188 Ariz. 10, 14–15, 932 P.2d 275, 279–80 (App.1996), we repeated that ruling with respect to freedom of assembly. The Defendant has presented nothing which would cause us to change our minds.

▉ The Defendant does cite a case, *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971), that was not discussed in either *Ochoa* or *Baldenegro* to support his argument that the vagueness and overbreadth of the statute impinges on First Amendment rights. The Defendant's reliance on *Coates* is misplaced for the following reasons: First, *Coates* dealt with an ordinance that made it a crime for "three or more persons to assemble ... and ... conduct themselves in a manner *annoying* to persons passing by...." *Coates v. City of Cincinnati,* 402 U.S. at 611, 91 S.Ct. at 1686–87 (emphasis added) (quoting Cincinnati,

OH., Code of Ordinances Section 901–L6 (1956)). The ordinance in *Coates* did not specify what constituted "annoying," whereas A.R.S. sections 13–105(7) and (8) are more specific about what constitutes a "criminal street gang" and a "criminal street gang member". Second, the ordinance in *Coates* proscribed conduct whereas the statute in this case does not regulate conduct but instead offers evidentiary definitions to assist judges and juries in determining whether a crime has been committed for a purpose which justifies and mandates an enhanced penalty. The Defendant's related argument, that it was error for the judge to use gang membership as an aggravating factor at sentencing because the statute is vague, is subject to the same frailty—lack of standing.

## THE TRIAL COURT DID NOT ERR IN REFUSING A LESSER INCLUDED OFFENSE INSTRUCTION

▉ The Defendant argues that the trial court should have given jury instructions on the crimes of disorderly conduct and endangerment as lesser included offenses of drive-by shooting. We have recently held, in *State v. Cisneroz,* 190 Ariz. 315, 316, 947 P.2d 889, 890 (App.1997), that disorderly conduct is not a lesser included offense of drive-by shooting. We need say no more on that subject.

▉ We turn to whether endangerment is a lesser included offense of drive-by shooting. A requested lesser included instruction is proper only if the lesser offense is composed of some, but not all, of the elements of the greater crime, so that it is impossible to commit the greater without committing the lesser offense, *and if the evidence supports an instruction on the lesser offense.* *State v. Celaya,* 135 Ariz. 248, 251, 660 P.2d 849, 852 (1983) (emphasis added). It is a corollary of the principle that the evidence must support a lesser included offense instruction, *that before such an instruction can be given the jury must be able to rationally find that all of the elements of the lesser offense were proved but all of the elements of the greater offense were not.* *State v. Malloy,* 131 Ariz. 125, 129, 639 P.2d

315, 319 (1981). It is this corollary that defeats the Defendant's argument.

 A case can be made for the proposition that one cannot commit the crime of drive-by shooting without also committing endangerment. A person commits drive-by shooting by (1) intentionally discharging a weapon, (2) from a motor vehicle, (3) at a person, another occupied motor vehicle or an occupied structure. A.R.S. § 13–1209 (Supp. 1996). Endangerment is defined as "recklessly endangering another person with a substantial risk of imminent death or physical injury." A.R.S. § 13–1201(A). The mental state, "recklessly" is subsumed in the mental state "intentionally." A.R.S. § 13–202(C). If it can be said, as well it might, that one cannot discharge a weapon at a person, occupied motor vehicle or an occupied structure without putting a person in substantial risk of imminent death or physical injury (the elements of endangerment), then endangerment would be a lesser included offense of drive-by shooting.[2]

We will assume for the purpose of this case that it is impossible to commit drive-by shooting without also committing endangerment. But that assumption does not resolve whether a lesser included instruction would have been proper in this case. The question is whether this case, and indeed most cases charged as drive-by shootings, can pass the *Malloy* test. Is there any way the jury could rationally find that the Defendant discharged a weapon at the house and trailer (thereby committing all the elements of endangerment, and all but one element of drive-by shooting) and did not commit the remaining element of drive-by shooting—the discharge of a weapon *from a motor vehicle?* That element was simply not an issue in this case. The Defendant admitted that he was in the car when the shots were fired from it. His whole defense was that the State did not prove that he was the person who fired the shots. There is no rational way the jury could find endangerment but not drive-by shooting. Under *Malloy*, it would have been improper to give a lesser included offense instruction.

The judgments of conviction and sentences are affirmed.

GERBER and SULT, JJ., concur.

---

2. The argument would not apply if the facts showed that a person discharged a firearm at a vacant house. A.R.S. section 13–3101(5) defines "occupied structure" to include a vacant dwelling house. It would be impossible to endanger anyone if the house fired at were vacant.