4 P.3d 426

**KATHERINE S., Petitioner,**

v.

**The Honorable John FOREMAN, Judge of the Superior Court of the State of Arizona, In and For the COUNTY OF MARICOPA, Respondent Judge,**

**State of Arizona, Real Party in Interest.**

**No. 1 CA–SA 98–0328.**

Court of Appeals of Arizona, Division 1, Department D.

Sept. 30, 1999.

Review Dismissed Oct. 5, 2000.

---

Jeffrey M. Zurbriggen, P.C. by Jeffrey Zurbriggen, Tempe, for Petitioner.

Richard M. Romley, Maricopa County Attorney by Diane Gunnels Rowley, Deputy County Attorney, Richard Nothwehr, Deputy County Attorney, Rene Williams, Deputy County Attorney, Phoenix, for Real Party in Interest.

## OPINION

KLEINSCHMIDT, Presiding Judge.

¶1 This special action challenges the constitutionality of Arizona Revised Statutes Annotated ("A.R.S.") section 8–235, the statute that gives the juvenile court the power to direct and control the behavior of any person whose conduct may be detrimental or harmful to a juvenile who is under the jurisdiction of the court. The petitioner, Katherine S., is the sister of a juvenile who had been adjudicated delinquent. The court entered certain orders directing and controlling Katherine's conduct, and she objected and filed this special action. We grant relief because the juvenile judge did not secure jurisdiction over Katherine and because he applied the statute in a manner that violated her right to notice, her right to remain silent, and her right to counsel. We further hold that section 8–235(B)(2), the part of the statute that allows the judge to order any person to do or refrain from doing anything that may be harmful or detrimental to a delinquent child or that may tend to defeat the orders of the court regarding a delinquent child or that may assist in or be necessary for the rehabilitation of such child, is unconstitutional because it is too vague to be enforceable. The statute fails to give notice of the acts that it prohibits, and it permits the juvenile judge to criminalize conduct on an *ad hoc* basis.[1]

¶2 The statute reads as follows.

A. A parent or legal guardian of a person who is under eighteen years of age shall exercise reasonable care, supervision, protection and control over the parent's or legal guardian's minor child.

B. On petition of a party or on the court's own motion, the court may make an order directing, restraining or otherwise controlling the conduct of a person if:

1. An order or disposition of a delinquent, dependent or incorrigible child has been or is about to be made in a proceeding under this chapter.

2. The court finds that such conduct is or may be detrimental or harmful to the child, will tend to defeat the execution of an order or disposition made or to be made or will assist in or is necessary for the rehabilitation of the child.

3. Notice of the petition or motion and the grounds therefor and an opportunity to be heard thereon have been given to the person against whom the order is directed.

C. The court may invoke its contempt powers pursuant to [A.R.S.] § 8–248[2] to

---

1. The question whether other parts of the statute, like the provisions that allow the judge to order a juvenile's parents to participate in counseling, treatment, and education programs, are valid is not before us, and we express no opinion about the validity of the statute in that respect.

2. Section 8–248 reads:

The juvenile court may punish a person for contempt of court for willfully violating, neglecting or refusing to obey or perform any lawful order of the juvenile court or for obstructing or interfering with the proceedings of the juvenile court or the enforcement of its

enforce any treatment, counseling, education or other restraining or protective order that applies to:

1. The child, the parents or guardian of the child or any other party before the court who is the subject of an order to participate in a counseling, treatment or education program or any other restraining or protective order.

2. The legal custodians or agencies, including agency personnel, that are ordered to provide treatment or services to the child, the child's family or any party named in the dispositional order.

D. The court may order a parent or guardian to pay the cost of any counseling, treatment or education program ordered pursuant to subsection B of this section.

E. If the court after notice and hearing finds that a person has failed to exercise reasonable care, supervision, protection and control of a minor pursuant to subsection A of this section or if the court holds a person in contempt for violating an order issued pursuant to this section, the court may immediately take one or more of the following actions:

1. Impose a fine of not more than one thousand dollars, plus any applicable surcharges and assessments.

2. Impose a term of incarceration in jail for a period of not more than thirty days.

3. Order the parents or guardian of the child to perform community service with their child.

F. If the court finds that the best interests of the child would be served thereby, in lieu of taking any action pursuant to subsection C of this section, the court may order the parent or guardian of a child to participate in a diversion program, approved by the supreme court, which requires the parent or guardian to perform community service or to attend and successfully complete a program of counseling, treatment or education. If the terms and conditions of the diversion order are successfully completed, the court shall dismiss its finding against the parents. If the court finds that the terms and conditions of the diversion order were not successfully completed it may take one or more of the actions specified in subsection D of this section.

G. Before a hearing that may result in incarceration for a person who is alleged to have violated a court order under this section, the court shall advise the person that the person has the right to be represented by counsel and that the court may appoint counsel if the court finds that the person is indigent.

A.R.S. § 8–235 (footnotes omitted).

¶3 The statute is adopted from section 53 of the Model Juvenile Court Act. 9A U.L.A. 89 (1998). There are very few cases that apply or discuss other statutes patterned after the Model Act, and none of these consider its constitutionality.[3]

¶4 The relevant facts are as follows. Katherine had at one time been adjudicated incorrigible and placed on probation. Her probation had been terminated. Her twin brother had also been adjudicated delinquent and had been ordered to appear before the juvenile drug court. The drug court monitors and provides services for juveniles who are on probation and who have drug abuse problems. The drug court judge ordered that no member of the family use drugs while the juvenile is in the drug court program.

¶5 A pipe for smoking marijuana was found in Katherine's brother's room, but the brother claimed that it belonged to Katherine. The record suggests that the brother's accusation was not made under oath. On its own motion, the court subpoenaed Katherine's mother and told her to bring Katherine to a drug court hearing. Nothing about the subpoena, except that it was issued under the caption in her brother's case, told Katherine why she was being ordered to appear in court.

¶6 At the hearing, Katherine was not represented by counsel, was not told that she

---

orders subject to the laws relating to the procedures therefor and the limitations thereon.

**3.** *See Davis v. Winston,* 535 N.E.2d 1240 (Ind. App.1989); *In re Interest of D.W.,* 249 Neb. 133, 542 N.W.2d 407 (1996); *In re B.F.,* 157 Vt. 67, 595 A.2d 280 (1991).

had the right to counsel, and was not advised that she had the right to remain silent. In the course of a discussion between Katherine and the judge, Katherine denied that the pipe found in her brother's room was hers, but she did say that she had her own pipe. The court ordered Katherine not to use drugs while her brother was in drug court and ordered her to provide a urine specimen for drug testing. She was also ordered to return to drug court the following week.

¶ 7 It is unnecessary to recite in detail all that transpired thereafter. It is enough to say that Katherine made some appearances at drug court and sometimes failed to appear and that she tested positive for marijuana use on several occasions. At one point, the judge ordered Katherine to bring her boyfriend to court, but this was not pursued because the judge learned that there was an outstanding warrant for his arrest.

■ ¶ 8 The juvenile judge eventually set a hearing to show cause why Katherine should not be held in contempt of court for her failure to abide by court orders and appointed counsel for her. Katherine failed to appear for the hearing, and she was eventually arrested on a bench warrant. On one occasion, in what we assume was an attempt to ensure that the court had jurisdiction over Katherine, the judge ordered the State to file a delinquency petition against her based on her disobedience of court orders. The State never complied, and the judge did not pursue the matter.[4] After failing to show for another hearing, the judge issued a bench warrant for her arrest.

¶ 9 Katherine filed this special action challenging the validity of A.R.S. section 8–235. The juvenile judge issued a minute entry explaining the background of drug court, re-

citing the history of this case, and setting forth the authority on which he had relied.[5] We stayed the enforcement of any juvenile court orders directed to Katherine in this case pending the resolution of the special action.

¶ 10 The petition for special action asserted that the juvenile court did not have subject matter jurisdiction over Katherine and challenged the statute on a number of constitutional grounds. The State responded, conceding that the juvenile court lacked jurisdiction to order Katherine to submit to urinalysis and attend drug court. It did not address the other issues raised in the petition. Following oral argument, we requested the State to respond to all the issues, and it has done so. Katherine has filed a reply.[6]

■ ¶ 11 We accepted jurisdiction because Katherine does not have an equally plain, speedy, and adequate remedy by appeal, *see In re Juvenile Action No. JT–295003*, 126 Ariz. 409, 411, 616 P.2d 84, 86 (App.1980), and because the constitutionality of A.R.S. section 8–235 is a matter of first impression and of statewide importance. *See Soos v. Superior Court*, 182 Ariz. 470, 472, 897 P.2d 1356, 1358 (App.1994).

■ ¶ 12 Katherine argues that the juvenile court lacked subject matter jurisdiction over her because she did not engage in a delinquent act and because the State never filed a complaint, indictment, or information against her. The juvenile judge cited a Florida decision, *In re Contempt of Elrod*, 455 So.2d 1325 (Fla.App.1984), for the proposition that jurisdiction extended to Katherine when he issued a subpoena to her mother directing her to bring Katherine to court. In *Elrod*, the trial court ordered a delinquent

---

4. A judge cannot order the county attorney to commence a prosecution. Whether to file a charge is the sole prerogative of the executive. *See State v. Murphy*, 113 Ariz. 416, 418, 555 P.2d 1110, 1112 (1976).

5. We have relied on this minute entry as the basis for the preceding description of the juvenile drug court. Authority for the establishment of drug courts can be found at A.R.S. § 13–3422.

6. The Attorney General of Arizona filed a request to join as amicus curiae, claiming that A.R.S.

§ 12–1841 gave her the right to do so. We denied the request, but the attorney general nonetheless filed a brief. The Petitioner moved to strike the brief. The proper way to correct any error we may have made in denying the request to file an amicus brief would have been to reurge the request by motion for reconsideration or to file a special action in the supreme court seeking an order compelling us to accept and consider the brief. By separate order, we grant Petitioner's motion to strike the attorney general's brief.

female child and her adult male boyfriend to terminate their relationship and to have no further contact. The pair ignored the order, and the trial court found the man guilty of indirect criminal contempt. The court of appeals held that the trial court had no jurisdiction to order the man to have no contact with the child. *Id.* at 1326. It nonetheless upheld the finding of contempt on an aiding and abetting theory, noting that the court did have jurisdiction over the delinquent child and that the Florida statutes provided that a court can exercise its contempt powers and punish any person for interfering with the administration of, or violating any provision of, Florida law relating to juveniles. *Id.* at 1327. Assuming the validity of the Florida court's holding, *Elrod* does not sustain the court's jurisdiction here, where Katherine was not charged with aiding and abetting the violation of any order directed to her brother, the person who was properly before the court.

■ ¶ 13 In the State's response in which it argues that the juvenile court has no jurisdiction over Katherine, the State urges us to grant relief to her on that basis alone and not to address the remaining issues. Neither the basis for the State's position nor the scope of its position is entirely clear. The gist of the State's position as it was reflected in its initial response is as follows:

Here, Katherine S. was in the past adjudicated to be an incorrigible child, but before the orders in question here were entered, the juvenile court had unsuccessfully terminated her probation. Therefore, there was no "proceeding" against Katherine S. pending, so the juvenile court did not retain jurisdiction over her for purposes of giving orders under her case. In fact, the juvenile court did not originally issue the orders here under Katherine S.'s file number, but under her brother Bobby S.'s cause number. But the juvenile court did not have subject-matter jurisdiction over Katherine S. in the proceedings concerning Bobby S. Under this analysis, then, it appears that the juvenile court here could certainly order the Petitioner Katherine S. not to use illegal drugs or break the law. She had no right to do those things in any

event. However, when the juvenile court went beyond that and ordered the juvenile Petitioner to attend drug court and submit to urinalysis, the State agrees that the juvenile court exceeded its powers.

¶ 14 At oral argument on the special action, counsel for the State took the position that the jurisdictional problem could have been cured by making Katherine a party to the case pursuant to Rule 1(C) of the Rules of Procedure for the Juvenile Court. That rule provides:

C. Wherever in these rules reference is made to a party to the action it means the child, parents, guardian, custodian, or any other person whose presence in the action is required in the interests of justice or designated by the court as a party.

The State reads "person" in section 8–235(B), which allows the court to control the conduct of a person, to mean "party" as referred to in Rule 1(C).

¶ 15 In its supplemental response, the State reaffirms its concession that the court lacked jurisdiction and again urges us to resolve the case on that ground and not to address the remaining issues. In explaining why there is no need to address those issues, it says:

However, as noted, a holding that A.R.S. § 8–235 does not extend jurisdiction to persons who are not parties to an action or otherwise under the jurisdiction of the juvenile court ensures that the problem will not be repeated.

The "problem" to which the State refers is Katherine's broad argument that the entire statute is invalid. In saying that a resolution based on lack of jurisdiction will solve the "problem," the State now appears to be taking the position that the statute can never be applied to anyone who is not before the court pursuant to some valid jurisdictional statute other than section 8–235. This is a departure from what counsel for the State said at oral argument. We are uncertain whether the State believes that section 8–235 is a valid statute and that jurisdiction is lacking in this case simply because Katherine was never joined as a party pursuant to Rule 1(C) or whether the State is conceding that section 8–235 cannot, in any way, confer juris-

diction on the juvenile court over a person in Katherine's position. Assuming that jurisdiction can be had by using Rule 1(C) to join a person as a party, neither Katherine nor the State addresses why jurisdiction did not attach when, on the day he cited Katherine for contempt, the juvenile judge ordered the clerk to open a separate file on her. Presumably, by that time, it was too late in the proceedings to achieve jurisdiction to punish Katherine for what had already transpired.

¶ 16 Statutes are presumed to be constitutional, and courts should not reach constitutional issues if the case can be fairly decided on other grounds. *R.L. Augustine Constr. Co. v. Peoria Unified Sch. Dist. No. 11*, 188 Ariz. 368, 370, 936 P.2d 554, 556 (1997). While we agree that the court never obtained jurisdiction over Katherine in this case, we believe it necessary to address the issues Katherine raises that have particular merit because the State's position on jurisdiction is so unclear; because there is a real possibility that Katherine will be subjected to further application of the statute if the jurisdictional defect is curable, *see Kolender v. Lawson*, 461 U.S. 352, 355 n. 3, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); and because the attempted conferral of jurisdiction under section 8–235 is intertwined with some of the other constitutional issues that Katherine raises. *See State v. Church*, 109 Ariz. 39, 41, 504 P.2d 940, 942 (1973) (fact that constitutional and non-constitutional issues are interwoven justifies addressing all issues). In view of our conclusion that the statute was applied in an unconstitutional manner and is void for vagueness, we need not address the remaining challenges to it.

## THE STATUTE WAS APPLIED IN A MANNER THAT VIOLATED CONSTITUTIONAL RIGHTS

¶ 17 The statute is so unusual that it eludes familiar patterns of analysis. We begin with the fact that it is founded in the criminal law because it depends for its effect on the imposition of criminal penalties. *What the statute actually does is set up an inquisitorial system that lacks procedural and substantive safeguards and gives the juvenile judge the power to criminalize any conduct* that the judge—whether in the exercise of good sense or in the exercise of misguided personal predilection—feels may be "detrimental" or "harmful" to a child or may "tend to defeat" an order of the court or may "assist" or be "necessary" for the rehabilitation of a child who is properly before the court. Viewed realistically, Katherine was charged (the subpoena), tried (the interview with the judge) and sentenced (the order to attend drug court and submit to urinalysis) before she was ever cited for contempt of court.

¶ 18 Setting aside the conceptual problem created by the judge presiding over an inquisitorial proceeding, some of the problems that arose here could be cured by applying the statute in a manner that does not offend the constitution. That was not done in this case. The process was begun with a subpoena that did not advise Katherine of why she was being summoned to court. Nor does the record disclose that Katherine was given any explanation of why she was in court before the judge elicited an admission of criminal conduct from her. This violated procedural due process because Katherine was facing a significant intrusion on her rights, and the notice that was provided was not appropriate to the nature of the case. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

¶ 19 The record shows that no real hearing was held when Katherine appeared in court. Instead, the judge interrogated her briefly and entered the orders in question. This was inadequate because procedural due process requires that a hearing be conducted according to regular and established rules of procedure. *Cf. Marco v. Superior Court*, 17 Ariz.App. 210, 496 P.2d 636 (1972) (violation *of domestic relations restraining order could* not be heard on pleading and affidavits).

¶ 20 Katherine was questioned about criminal conduct—conduct that could and did result in an immediate consequence—without ever being advised that she had the right to remain silent. This violated *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d

694 (1966), and Rules 6 and 7 of the Arizona Rules of Procedure for the Juvenile Court.

¶ 21 Katherine was entitled to counsel because as soon as the judge began the inquiry into her conduct, the focus was on her, and she was involved in a critical stage of the proceedings. In *State v. McKinney*, 185 Ariz. 567, 573, 917 P.2d 1214, 1220 (1996), our supreme court explained that a proceeding is in a critical stage when substantial rights may be affected by what is transpiring. The court said that the factors a court must consider in deciding whether there is a right to counsel are whether the proceeding is at a stage where failure to pursue particular strategies or remedies may result in the loss of significant rights, whether counsel would be helpful to the person before the court in understanding the legal confrontation, or whether the proceeding tests the merits of the case. *Id.* (citing *Menefield v. Borg*, 881 F.2d 696, 698–99 (9th Cir.1989)). All of these factors apply here.

¶ 22 Katherine was subjected to urinalysis, which is a significant intrusion on the Fourth Amendment right under the United States Constitution and article 2, section 8 of the Arizona Constitution to be free from an unreasonable search and seizure. "[S]tate-compelled collection and testing of urine ... constitutes a 'search' subject to the demands of the Fourth Amendment." *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646, 652, 115 S.Ct. 2386, 132 L.Ed.2d 564 (1995); *Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 617, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989). Some pursuits or occupations in which people voluntarily engage may subject them to urinalysis. *See National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 672, 109 S.Ct. 1384, 103 L.Ed.2d 685 (1989) (customs officials) and *Vernonia*, 515 U.S. at 657, 664–65, 115 S.Ct. 2386 (student athletes). The fact that a person resides in a household with an adjudicated delinquent child is not one of these. If we assume that Katherine's admission that she had her own marijuana pipe provided probable cause to require her to submit to urinalysis, that probable cause was derived from unwarned and uncounseled admissions. The order was legally unfounded and violated Katherine's right to privacy.

¶ 23 Both the juvenile judge in his explanatory minute entry and the State in its supplemental response asserted that procedural due process rights are protected under section 8–235 because, before a person can be punished for having disobeyed a court order, all of the rights and procedures provided for in contempt proceedings must be afforded to the accused. That view of the matter, however, overlooks the point at which a criminal proceeding was, in reality, initiated. That view ignores the fact that the court, in the role of investigator and accuser, haled Katherine into court, conducted an inquiry, and imposed restrictions and obligations on her as if she had been convicted and placed on probation.

¶ 24 The judge in his minute entry and the State in its response observed that Katherine has no reason to complain about the order that she not use drugs because she is not entitled to do that in any event. While we do not consider the point particularly important in view of the other clearly intrusive orders that were entered, a directive not to violate the law does run counter to the established principle that courts will not enjoin the commission of an illegal act. *See Takiguchi v. State*, 47 Ariz. 302, 304–05, 55 P.2d 802, 803 (1936); *State ex rel. LaPrade v. Smith*, 43 Ariz. 131, 135, 29 P.2d 718, 721, *opinion modified*, 43 Ariz. 343, 31 P.2d 102 (1934). The rule exists to prevent what happened here. A criminal statute is itself the command not to do an unlawful act. No further injunction is warranted or appropriate. Were it otherwise, a judge could issue such orders and then deprive violators of the right to a jury trial and to many of the procedural safeguards guaranteed by the Constitution because not all of those rights appertain to contempt proceeding. *See* 43A C.J.S. *Injunctions* § 158 (1978). While the right to a jury trial is not implicated in this case, the broad point nevertheless applies. An injunction cannot be employed to avoid the safeguards of the criminal process.

## THE STATUTE IS UNCONSTITUTIONALLY VAGUE

¶ 25 Katherine contends that section (B)(2) of the statute is unconstitutionally

vague because it allows the court to enjoin any person whose conduct may be "detrimental" or "harmful" to a child or "tend[s] to defeat" an order or disposition relating to the child, or "assist[s] in" or is "necessary" for the rehabilitation of a child. *See* A.R.S. § 8–235(B)(2).

¶ 26 The concept that a statute may offend substantive due process because it is vague has two facets. *See Kolender*, 461 U.S. at 357, 103 S.Ct. 1855. The first is that a provision may be so vague that it fails to give a person of ordinary intelligence fair notice that particular conduct is forbidden. *Id.* While Katherine was on notice as to what was expected of her after her first court session, that fact does not necessarily cure the vagueness objection. The statute exposes everyone who has any contact, voluntary or otherwise, with a child who is under the jurisdiction of the court to the processes of the court. Since it is impossible for everyone who comes in contact with a child to know whether the child is under the jurisdiction of the court, or to know in advance what particular conduct a juvenile judge might consider, for example, as tending to defeat the orders of the court, the statute is arguably vague in that respect.

¶ 27 The second facet of the concept that a statute may be void for vagueness is more problematical. A statute may be so vague that it impermissibly delegates basic policy matters to police officers, judges, and juries for resolution on an *ad hoc* basis with the attendant dangers of arbitrary and discriminatory application that such delegation brings. *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972) (vagrancy statute permitted arbitrary arrests and convictions); *Interstate Circuit, Inc. v. City of Dallas*, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968) (ordinance that allowed classification of films to protect children from sexual promiscuity void for vagueness); *State v. Vallery*, 212 La. 1095, 34 So.2d 329 (1948) (statute punishing adults who permit a child to perform an "immoral act" void for vagueness because it left to the court the determination of what was "immoral").

¶ 28 The State contends that Katherine has no standing to challenge the statute on vagueness grounds. It is true that the general rule is that a person whose conduct is clearly proscribed by the core of a statute may not successfully challenge it for vagueness. *State v. Tocco*, 156 Ariz. 116, 119, 750 P.2d 874, 877 (1988); *Parker v. Levy*, 417 U.S. 733, 756, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); *see also Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). Conduct is clearly proscribed when a defendant's actions fall directly within the language or definitions of a statute. *See, e.g., Parker* 417 U.S. at 754, 94 S.Ct. 2547 (defendant's conduct paralleled an example of illegal conduct in manual); *State v. Torres–Mercado*, 191 Ariz. 279, 281, 955 P.2d 35, 37 (App.1997), *review denied* (May 19, 1998) (defendant could not challenge criminal street gang statute when he admitted membership in gang).

¶ 29 Unlike the case before us, the cases that limit standing appear to deal with conduct that falls directly within a *definition* provided in the statute. But ignoring that distinction and assuming that section 8–235 can be said to have a core, and further assuming that the orders to Katherine were within that core, we nevertheless believe that Katherine has standing to challenge the statute for vagueness. The statute was applied to invade Katherine's liberty interests. The order that she attend drug court affected that liberty interest. *See In re Appeal in Coconino County Mental Health No. MH 95–0074*, 186 Ariz. 138, 139, 920 P.2d 18, 19 (App.1996). The order that she submit to urinalysis invaded her right to privacy. *Vernonia*, 515 U.S. at 652, 115 S.Ct. 2386. As the Supreme Court said in *City of Chicago v. Morales*, 527 U.S. 41, 119 S.Ct. 1849, 1858, 144 L.Ed.2d 67 (1999), when a criminal law that contains no *mens rea* requirement infringes on constitutionally protected rights and when vagueness permeates the text of such a law, it is subject to facial attack. This law has no *mens rea* requirement, it infringes on constitutionally protected rights, and vagueness permeates its text. Katherine has as much standing to attack section 8–235 for vagueness as Morales had to attack the Chicago anti-gang ordinance.

¶ 30 There is another reason Katherine has standing to challenge the statute as vague. A statute that impinges on First Amendment rights is subject to a vagueness challenge even though the conduct of those challenging the statute is not constitutionally protected and even though such conduct falls within the core of the statute. *See Matter of Appeal In Maricopa County Juvenile Action No. JT9065297*, 181 Ariz. 69, 74, 887 P.2d 599, 604 (App.1994). The First Amendment right implicated in this case is the right to maintain intimate human relationships. *See City of Dallas v. Stanglin*, 490 U.S. 19, 24, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18, 104 S.Ct. 3244, 82 L.Ed.2d 462 (1984)). The statute implicates this right because Katherine's association with her brother is the link that the statute uses to give the juvenile court the power to control Katherine's conduct. If this were not enough, at oral argument and again in the briefs, Katherine's counsel, without contradiction by the State, asserted that the juvenile court in Maricopa County has entered orders interfering with the right of individuals to associate, including forbidding family members from visiting or residing in a family residence with a juvenile who is under the jurisdiction of the court unless they submit to urinalysis. The State does not deny that the juvenile court is entering such orders, but protests that the circumstances that gave rise to such orders are unknown because they are not part of the record. The point for us in the context of deciding standing, however, is not whether such orders were reasonable or constitutionally permissible, but whether they were entered. In any event, given the nature of the statute and the ends it attempts to achieve, it is safe to assume that it will inexorably impinge on freedom of association.

¶ 31 There is very little more that can or needs to be said about section 8–235. It is uniquely vague. It sets no limits on what a judge can criminalize, and, allowing such free range, it clearly lends itself to arbitrary application.

¶ 32 The State has admitted as much. In its response, it acknowledged:

As it is written, the statute purports to give the juvenile court the power to order **any** person to do **anything the juvenile court** believed would be in the best interests of any juvenile who was before the juvenile court in any proceeding. However, the statute cannot be read that broadly without falling afoul of the provisions of the United States and Arizona Constitutions protecting citizens' rights to liberty, privacy, and due process.

¶ 33 The State, however, encourages us to clarify and narrow the statute into constitutionality by adopting what the Chief Justice of the Indiana Supreme Court said in his dissent in *West Clark Community Sch. v. H.L. K.*, 690 N.E.2d 238 (Ind.1997). In that case, the Indiana court was deciding whether a lower court could order a school to reinstate a delinquent juvenile who had been suspended from classes. *Id.* at 240. Although the court considered the effect of an Indiana statute that purported to bestow power on the juvenile court to "control the conduct of any person in relation to [a] child under the jurisdiction of the court," *id.* at 241, the case is not particularly helpful here because it involved the interplay of that statute with a school pupil discipline statute that has no parallel in Arizona law. *See id.* In *H.L.K.*, there had been no constitutional challenge to the statute, but the majority gratuitously admonished courts to apply it with restraint. *Id.* at 242.

¶ 34 The chief justice, obviously concerned about the constitutionality of the statute, wrote separately and said that he did not believe that the statute conferred plenary supervisory authority over any person or institution. *Id.* He thought that the words "control the conduct of any person in relation to the child" could be limited to provide "injunctive authority that a court may use in carrying out its substantive powers enumerated elsewhere in the statute." *Id.*

¶ 35 It is impossible to discern from the opinion in *H.L.K.* to what other "substantive powers" the chief justice was referring. In our case the State suggests we draw a parallel to these substantive powers by looking to the Arizona statutes that require parents to provide a child with physical and mental

health care [7] and that make it a crime to contribute to the dependency or delinquency of a child.[8] The State suggests that we limit the application of section 8–235 to people who have been found guilty of violating those provisions. We question the logic of the suggestion. The statutes the State refers to are subject to normal procedural safeguards, and they carry their own sanctions that affect their purposes as well as section 8–235 would do. The saving construction the State suggests is strained and would result in a superfluous statute.

¶ 36 IT IS ORDERED granting the relief requested and vacating all of the orders of the juvenile court directing and controlling the conduct of Katherine in this case.

CONCURRING: REBECCA WHITE BERCH, Judge, and RUDOLPH J. GERBER, Judge.