NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

DANIEL HORTON, *Appellant*.

No. 1 CA-CR 14-0470
FILED 3-8-2016

Appeal from the Superior Court in Maricopa County
No. CR2012-154853-001
The Honorable Roland J. Steinle, Judge

**CONVICTIONS AFFIRMED AS MODIFIED, SENTENCES VACATED,
REMANDED FOR RESENTENCING**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Michael J. Dew, Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Chief Judge Michael J. Brown joined.

---

**C A T T A N I**, Judge:

¶1        Daniel Horton appeals from his convictions of two counts of aggravated assault.  For reasons that follow, we conclude that the evidence does not support the convictions, reduce each conviction to the lesser-included offense of attempted aggravated assault, and remand for resentencing.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        One night in October 2012, a woman ("H.H.") and her boyfriend ("L.W.") were arguing in front of H.H.'s housing unit in Phoenix.  H.H. walked to the street corner and L.W. followed in his car.  L.W. got out of the car and the couple continued to argue and raise their voices.  Although the encounter never became physical, at one point L.W. placed his hands on H.H.'s hips.

¶3        As the argument began to calm, H.H. and L.W. noticed a man standing across the street watching them.  As they continued their conversation, they noticed the man still watching them.  L.W. yelled to the man, "Do we have a problem?" and the man shouted for L.W. to step away.  The man also raised his hand as if holding a gun.  L.W. placed his wallet on top of the car, stating "I got a gun too" and asking "what are you going to do now?"  As the man stepped under a light, H.H. recognized him as someone she knew and started walking towards him.  Horton then walked away.

¶4        As Horton was walking away, H.H. saw that he was holding a gun and told L.W., "He has an actual gun."  H.H. and L.W. followed Horton to see what apartment complex he entered, then reported the incident to the Phoenix Police Department.

¶5        During a consensual search of Horton's apartment, police officers found a handgun hidden in the cushion of a couch and arrested him.  H.H. and L.W. subsequently identified Horton as the man who had

been across the street while they were arguing, and Horton was charged with two counts of aggravated assault, both class three felonies.

¶6        Horton failed to appear at a pre-trial hearing and at trial, which proceeded in his absence.  H.H. testified that Horton had responded to L.W. by raising his hand in a manner suggesting he had a gun in his hand.  But H.H. also testified that she did not know Horton had a gun until she saw it in his hand as he was walking away.  H.H. did not indicate that she feared for her safety.

¶7        L.W. testified that he thought Horton was "just playing" and trying to scare him.  L.W. was not aware Horton had an actual gun until H.H. told him about it as Horton was walking away.  L.W. stated that at that point he was "scared" because, even though Horton was walking away, he was close to H.H. and there was a possibility he could turn around.

¶8        Following the State's presentation of evidence, Horton's counsel moved for a directed verdict on both counts, which the superior court denied while noting that it was a "close" call.  The jury returned guilty verdicts as to both counts.  The court then denied Horton's motion for a new trial in which he argued the verdicts were contrary to the evidence.  Horton was sentenced to mitigated, concurrent terms of five years' incarceration for both counts, with credit for 214 days of presentence incarceration.  Horton timely appealed, and we have jurisdiction under Arizona Revised Statutes ("A.R.S.") § 13-4033.[1]

## DISCUSSION

¶9        Horton challenges the trial court's denial of his motion for judgment of acquittal and the sufficiency of the evidence underlying his convictions.

## I.        Sufficiency of Evidence.

¶10        We review de novo the superior court's denial of a motion for judgment of acquittal under Arizona Rule of Criminal Procedure 20.  *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).  A judgment of acquittal is appropriate only "if there is no substantial evidence to warrant a conviction."  *See* Ariz. R. Crim. P. 20(a); *State v. Jones*, 188 Ariz. 388, 394 (1997).  Substantial evidence is evidence, viewed in the light most favorable

---

[1]        Absent material revisions after the relevant date, we cite a statute's current version unless otherwise indicated.

to sustaining the verdict, from which a reasonable person could find a defendant guilty beyond a reasonable doubt. *See State v. Bearup*, 221 Ariz. 163, 167, ¶ 16 (2009).

¶11 In assessing the sufficiency of the evidence, we do not address the credibility of witnesses or reweigh the evidence; rather, we defer to the determination of the jury. *See State v. Buccheri-Bianca*, 233 Ariz. 324, 334, ¶ 38 (App. 2013). Mere speculation, however, concerning "possibilities" is an insufficient basis to support a conviction. *State v. Garcia*, 227 Ariz. 377, 379, ¶ 9 (App. 2011).

¶12 A defendant commits aggravated assault by intentionally placing the victim(s) in reasonable apprehension of imminent physical injury, through the use of a deadly weapon. *See* A.R.S. §§ 13-1203(A)(2), -1204(A)(2). Both direct and circumstantial evidence may be used to prove the victim's apprehension, and "[t]here is no requirement that the victim testify to actual fright." *State v. Wood*, 180 Ariz. 53, 66 (1994).

¶13 Citing *State v. Baldenegro*, 188 Ariz. 10, 13 (App. 1996), Horton asserts that the State did not present evidence that the victims reacted with apprehension or fear. In *Baldenegro*, this court concluded that the State did not provide evidence from which a jury could conclude that the victim "saw a gun pointed at him or at the car before the shooting," and thus the evidence was insufficient to establish even circumstantial proof of an apprehension of fear. *Id.* at 13. Here, Horton argues that the evidence similarly established only that the victims became aware that Horton had a weapon after he began to walk away from them.

¶14 The State acknowledges that the victims did not believe that Horton intended to place them in reasonable apprehension of imminent physical injury while they saw him from across the street. The State asserts, however, that the victims' reasonable apprehension occurred when Horton was walking away from them and they realized that Horton had been pointing a gun at them.

¶15 The first victim, H.H., testified that she did not see the gun until she started to approach Horton after recognizing him as someone she knew. H.H. stated that when she spoke to Horton, he recognized her and he put the gun down and started to walk away. H.H. followed Horton, even though it was clear that Horton did not want to talk to her and was trying to leave. H.H. did not testify that she was afraid of Horton or that she felt she was in danger, even after seeing that Horton had a gun. Under these circumstances, the evidence was insufficient to establish that H.H.

reasonably apprehended imminent physical injury, and we thus vacate the jury's finding to that effect.

¶16        The aggravated assault conviction involving the second victim, L.W., presents a closer question. L.W. testified that he was "scared" after learning that Horton actually had a gun, even though Horton was no longer pointing it at him or H.H.:

> Q.  [By the Prosecutor] At the point that [H.H.] said that [Horton had a gun] and you realized he had[,] had a real gun and in fact did have a real gun, at this time, what were you thinking?
>
> A.  [L.W.] I was scared.  I was scared, first of all, because I didn't know who he was.  Second, I didn't know if he was the kind of person to come back and later on retaliate against something I said.  She recognized him and I didn't want him to try to do something to her, you know.  So I was -- I was scared.
>
> Q.  At the point -- at this point he has turned around and is walking away, were you still scared?
>
> A.  I was -- I was--yeah, I was still scared and surprised, but I was more likely scared because I realized when she said it was like a real gun.  I was like, wow, it is a real gun.  I was like, man, I was being stupid.  You know, pretending like I had a gun and he really had a real one, so, you know.  And then -- I didn't think what she [was] doing when she walked away from me, you know, walking in the front of the path of the gun, you know, she didn't think it was real either until she actually walked upon it.
>
> Q.  To the point he put the gun down and was walking away, why would you still be scared?
>
> A.  At the point he put the gun down and was walking away?  Because I was surprised that it was a real gun and that she was closer to him than me.
>
> Q.  Given what had happened, did you think it was a possibility that he could still turn around?
>
> A.  Yeah.

¶17        Although L.W.'s statements that he was afraid Horton could still turn around and that he might retaliate arguably suggest apprehension, in context, the testimony reflected L.W.'s apprehension about what had previously happened and apprehension for H.H.'s safety, rather than L.W.'s imminent fear for his own safety. By the time L.W. learned about the gun, Horton was walking away from him, and even assuming Horton kept the gun in his hand to discourage H.H. and L.W. from following him, there was no evidence that he made any movements suggesting he might turn around to harm them. Moreover, any suggestion of fear of imminent harm is belied by the fact that L.W. and H.H. followed Horton even after realizing he had a gun. Accordingly, we similarly vacate the jury's finding that L.W. was in imminent fear of physical injury.

¶18        Although the evidence was insufficient to establish fear of imminent physical injury, the evidence established the remaining elements of aggravated assault, and thus establish all of the elements of the lesser-included offense of attempted aggravated assault. Because the jurors necessarily found those elements, we reduce Horton's aggravated assault convictions to attempted aggravated assault and remand for resentencing. *See* A.R.S. § 13-4036 (appellate court may "affirm or modify the judgment appealed from, and may grant a new trial or render any judgment or make any other order which is consistent with [] justice and the rights of the state and the defendant"); *see also State v. DiGuilio*, 172 Ariz. 156, 161–62 (App. 1992) (collecting cases in which Arizona appellate courts have modified judgment to reflect conviction of a lesser-included offense when there was insufficient proof of an element required for the greater offense).

## CONCLUSION

¶19        For the foregoing reasons, we modify Horton's aggravated assault convictions to attempted aggravated assault and remand for resentencing.



Ruth A. Willingham · Clerk of the Court
FILED: ama