28 P.3d 327

STATE of Arizona, Appellee,

v.

Jose Nunez GARCIA, Appellant.

No. 1 CA–CR 99–0852.

Court of Appeals of Arizona,
Division 1, Department B.

July 10, 2001.

Janet Napolitano, Attorney General, by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Consuelo M. Ohanesian, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James Haas, Maricopa County Public Defender, by Lawrence S. Matthew, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

FIDEL, Judge.

¶ 1 Defendant Jose Nunez Garcia was tried by jury on nine counts of child molestation, one count of attempted child molestation, and one count of indecent exposure; six young girls were alleged to be the victims of these counts. Defendant was acquitted of eight of the charges, but convicted of two counts of child molestation, both concerning victim Abby H., and one count of indecent exposure involving victim Sarah H. For the two counts of child molestation, both class 2 felonies and dangerous crimes against children, Defendant was sentenced to consecutive terms of 17 years in prison; for the indecent exposure, a class 6 felony, he was placed on lifetime probation. In this timely appeal, Defendant alleges that all counts must be reversed because the trial court inappropriately admitted evidence of uncharged crimes. In considering that allegation, we address the question, among others, whether evidence of a defendant's uncharged acts must be screened for admissibility pursuant to Rules 403 and 404(c) of the Arizona Rules of Evidence even when the evidence is offered to establish that defendant's lewd disposition toward a particular victim.

### BACKGROUND

¶ 2 Defendant moved before trial to sever the two molestation counts involving Abby H. He argued that it would be unfair to try those two counts with those of the other girls because Abby H. was the only victim whose allegations were corroborated by medical evidence. Abby H. had said that Defendant had repeatedly inserted his finger inside her vagina, causing her considerable pain. Dr. Sylvia Strickland, a physician specializing in sexual abuse, testified at the severance hearing that she had examined Abby H. and that the tissue on one side of the girl's hymen was almost totally destroyed. Such an injury, she said, was evidence of repeated, painful molestation. The doctor repeated this evidence at trial.

¶ 3 The trial court denied the motion to sever because evidence of the two counts involving Abby H. would have been admissible at a trial on the other counts to show that Defendant had an aberrant sexual propensity to molest young girls. The court made specific findings concerning these counts pursuant to Rules 404(c) and 403 of the Arizona Rules of Evidence:

> I find that the evidence presented is sufficient to permit the trier of fact to find *by clear and convincing evidence* that the defendant committed the acts complained of in Counts 5 and 6 of the indictment. I find that the commission of those other acts provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crimes charged in the indictment.
>
> I also find that the evidentiary value of proof of Counts 5 and 6 *is not substantially outweighed by danger of unfair prejudice* or other factors mentioned in Rule 403 . . .
>
> In making this determination and the determination of the Rule 403 balancing test, *I have considered the factors set forth in Rule 404(c)(1)(C)* . . . . I find that the facts support . . . the existence of the factors required by Rule 404(c)(1)(C).

(Emphasis added).

¶ 4 As the severance hearing concluded, the judge advised the prosecutor to proceed with "extreme caution" in permitting the victims to testify about uncharged incidents when Defendant had molested them: "I am not going to permit the victims to get up here and say that this happened, you know, 20, 30, 15 or whatever times during those

time periods. The indictment is very specific as to when these alleged incidents occurred."

¶ 5 The trial court reversed this position, however, in response to a motion in limine filed by the prosecutor the following day. The court ruled that the State might introduce

specific acts ... that were committed by the defendant as to each particular victim to show the defendant's lewd disposition or unnatural attitude toward the particular victim.

I find also that it's not necessary to conduct a 404(b) analysis or a 404(c) analysis ... I will, however, give limiting instructions at the conclusion of the case to instruct the jurors that they are only to consider those acts to show the defendant's propensity toward the respective victim only as to those respective victims and not toward all the other victims in the case.

¶ 6 After the trial court made this ruling, Defendant unsuccessfully moved to sever each victim's case and have six separate trials.

¶ 7 Defendant also asked the court to analyze under Rule 403 whether the probative value of the uncharged act testimony outweighed the danger of unfair prejudice. The trial court, however, did not undertake a 403 analysis with respect to the evidence of uncharged acts, and the six children and Defendant testified as follows:

#### 1. Abby H.

¶ 8 Count 5 of the indictment alleged that Defendant had molested Abby H. at her home between June 19, 1993, and June 18, 1994. Count 6 alleged the same for the period between June 19, 1993, and December 31, 1996. These were the two molestation counts that resulted in convictions.

¶ 9 Abby H. was born on June 16, 1989. She testified that she had known Defendant, whom she called "Uncle Joe," her entire life. He was a frequent visitor to her home and would sometimes take her and her sisters to the movies and to the Salt River. On occasion, Defendant would participate in sleep-overs at her home. When this happened Defendant, Abby, and her sisters would sleep next to each other on blankets or sleeping bags on the living room floor. Abby H. said that during a "lot" of these sleep-overs Defendant would stick his hands in her underwear "and put his finger up my private" and "wiggle it around." Although this was painful, Abby never told Defendant to stop because "he would tell me it's okay."

¶ 10 Abby H. also said that on some trips to the Salt River Defendant had her touch his "private" when the other girls were playing in the water.

#### 2. Chelsea P.

¶ 11 Count 1 of the indictment alleged that Defendant molested Chelsea P. between January and December 1996 while she was at Abby H.'s home. Chelsea P. was born on May 28, 1990. She testified that on more than one occasion while he pushed her on a swing, Defendant would "squeeze" her "privates." Defendant was acquitted of count 1.

#### 3. Adele H.

¶ 12 Adele H., Abby H.'s sister, was born November 2, 1991. Counts 2 and 3 alleged that Defendant molested Adele H. once at her home and once at the movies, both events occurring between November 2, 1995, and December 25, 1996. Adele testified that when Defendant took her to the movies, she would sit on his lap and he would touch her underneath her clothes. She also testified that he touched her "private area" during sleep-overs. Defendant was acquitted of counts 2 and 3.

#### 4. Amanda H.

¶ 13 Amanda H., another of Abby H's. sisters, was born on November 25, 1987. Count 4 alleged that Defendant molested Amanda H. at her home between November 25, 1994, and November 24, 1996. Amanda testified that Defendant would "rub" her "private area" when she rode with him in his car or company truck. She also testified that Defendant would say, "Give me a few rubs. I'll give you some candy." Defendant was acquitted of Count 4.

### 5. Jamie R.

¶ 14 Jamie R. was born July 9, 1990. Count 7 alleged that Defendant molested her at Abby H.'s home by touching her genitals with his foot. This incident allegedly occurred between August 15, 1996, and December 31, 1996. Defendant was acquitted of Count 7.

¶ 15 Jamie testified that Defendant visited her home two or three times a week, and would take her and other children on outings. Jamie testified that on a sleep-over at Abby H.'s house Defendant had touched her "private part" with his fingers. She also testified that Defendant had touched her more than once, and that sometimes he would try to put his "private part" inside her: "He tried to but he couldn't." Jamie R. also testified that one time Defendant photographed her "private area."

¶ 16 Jamie R.'s mother, Barbara B., also testified. She said that just before Christmas of 1996 Defendant had come to her home for a visit. Barbara, Defendant, and Jamie were playing a "game" and tickling each other under a blanket. Barbara got kind of sleepy and was just "sitting there." Then, she picked up the blanket and "noticed my daughter had ahold of [Defendant's] dick." Defendant was "very into it, very content." Barbara testified that she then pulled the blanket away and asked Defendant to leave.

### 6. Sarah H.

¶ 17 Counts 8 and 9 alleged that Defendant molested Sarah H. twice during trips to the Salt River between December 23, 1994, and December 22, 1996. Count 10 alleged that he attempted to molest her, and Count 11 alleged that he exposed himself to her, both during the same period of time. Defendant was acquitted of counts 8, 9, and 10, but convicted of count 11.

¶ 18 Sarah H. testified that she was born on December 23, 1988, and that she grew up with Abby H. and her sisters, whose mother babysat her. Sarah referred to Defendant as "Uncle Joey." She testified that Defendant would take the girls on trips to the Salt River, and that one time when she was in Defendant's car, he showed her his "private" and offered her candy if she would touch it. She testified that Jaime R. was present in the car during this incident. Jaime R., however, did not remember the incident. She also testified that on other trips to the river Defendant would set the girls on his lap and touch them under their clothing. She said these things happened while she was between six and eight years old. Sarah said Defendant touched her under her bathing suit more than once—every time he took her to the Salt River.

### 7. Defendant

¶ 19 Defendant testified and denied inappropriately touching any of the children. He explained the allegations, which followed an investigation initiated by Barbara B. shortly after the "tickling game" incident, as possibly resulting from his failure to respond to what he claimed were Barbara B.'s romantic advances. Defendant admitted, however, that once while he was at the Salt River with several of the children, Sarah H. and two other girls snuck up on him while he was urinating. He testified that when he finished urinating, he told them,

> I don't think your mom or dad would be very happy to hear that you guys snuck up here to watch me pee. You could get me in a lot of trouble. I'd never be able to come over and pick you up anymore. I wouldn't be able to come and see you. I wouldn't be able to ever be around you anymore at all.

### MISSING ELEMENT

¶ 20 Before considering Defendant's argument concerning the unfairly prejudicial introduction of uncharged act evidence, we address and reject his contention that his indecent exposure conviction, if otherwise upheld, should be reduced from a felony to a misdemeanor because the jury was neither instructed on, nor found, an essential element of the offense: that Sarah H., the victim, was under 15 years of age.

¶ 21 Sarah testified that she was born on December 23, 1988, and the indictment alleged that the indecent exposure occurred between December 23, 1994, and December

22, 1996. Defendant did not raise the issue of Sarah's age at trial, nor does he argue on appeal that she actually was 15 years old or older at the time of the offense.

¶ 22 A.R.S. § 13–1402, our indecent exposure statute, reads as follows:

> A. A person commits indecent exposure if he or she exposes his or her genitals or anus or she exposes the areola or nipple of her breast or breasts and another person is present, and the defendant is reckless about whether such other person, as a reasonable person, would be offended or alarmed by the act.
>
> B. Indecent exposure is a class 1 misdemeanor. Indecent exposure to a person under the age of fifteen years is a class 6 felony.

¶ 23 The United States Supreme Court has recently held that, with the possible exception of sentencing factors such as prior convictions, any element of an offense that increases the penalty must be charged in the indictment and proven to the jury beyond a reasonable doubt. *See Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000); *Jones v. United States,* 526 U.S. 227, 232, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999). The Court has also held, however, that omission of an element from the jury instructions is subject to harmless error review. *Neder v. United States,* 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Error is harmless if we can say beyond a reasonable doubt " 'that error complained of did not contribute to the verdict obtained.' " *Id.* (quoting *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)).

¶ 24 According to the undisputed evidence, Sarah H. was at most eight years old when Defendant was alleged to have exposed himself to her. Defendant did not contest her age (nor, for that matter, the age of any of the alleged victims). Assuming for the sake of disposition that Sarah H.'s age was an element of felony indecent exposure that should have been included in the jury instruction, the error of its omission here was harmless beyond a reasonable doubt.

## UNCHARGED ACT EVIDENCE

¶ 25 Defendant contends that the trial court erred in admitting testimony about uncharged sexual acts by various witnesses without analyzing its admissibility within the framework established in Rule 404(c) of the Arizona Rules of Evidence. We review a trial court's admission of such evidence for abuse of discretion. *State v. Vigil,* 195 Ariz. 189, 191, ¶ 13, 986 P.2d 222, 224 (App.1999).

¶ 26 Rule 404 prohibits introducing evidence of a person's bad character in order to prove "action in conformity therewith on a particular occasion." Ariz.R.Evid. 404(a). But Rule 404(c) establishes an exception and permits the admission of evidence of uncharged acts to establish "that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Ariz.R.Evid. 404(c).

¶ 27 Before admitting such evidence, a trial judge must specifically find:

> (A) The evidence is sufficient to permit the trier of fact to find that the defendant committed the other act.[1]
>
> (B) The commission of the other act provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged.
>
> (C) The evidentiary value of proof of the other act is not substantially outweighed by danger of unfair prejudice, confusion of issues, or other factors mentioned in Rule 403.[2]

Ariz.R.Evid. 404(c)(1). Additionally, when such evidence is admitted, the court must give the jury a limiting instruction as to its

---

1. This factor must be found by clear and convincing evidence. *State v. Terrazas,* 189 Ariz. 580, 582, 944 P.2d 1194, 1196 (1997).

2. The statute lists factors the court must consider in balancing the probative value of the evidence against its potential for unfair prejudice: remoteness of the uncharged act, similarity or dissimilarity of the uncharged and charged acts, strength of the evidence defendant committed the uncharged act, frequency of the uncharged acts, surrounding circumstances, intervening events, other similarities or differences, or other relevant factors. *See* Ariz.R.Evid. 404(c)(1)(C)(i-viii).

proper use. Ariz.R.Evid. 404(c)(2). *See* Comment to 1997 Amendment.

¶ 28 Rule 404(c) was added to our evidentiary rules in 1997. According to the comment to the 1997 amendment, it was intended to codify the case law previously set out in *State v. McFarlin,* 110 Ariz. 225, 517 P.2d 87 (1973), and *State v. Treadaway,* 116 Ariz. 163, 568 P.2d 1061 (1977). In *McFarlin* our supreme court held that in trials on charges concerning abnormal sexual acts such as child molesting, a defendant's aberrant sexual propensity might be proved by admitting evidence of similar acts committed near in time to the offense charged. 110 Ariz. at 228, 517 P.2d at 90. But in *Treadaway,* the supreme court held such evidence inadmissible when the other acts are remote in time, absent expert medical testimony that they do, in fact, establish a defendant's "continuing emotional propensity to commit the act charged." 116 Ariz. at 167, 568 P.2d at 1065.[3] Subsequent case law made it clear that even after the State had established the probative value of propensity evidence, the trial judge still had to balance its probative value against the danger of unfair prejudice before admitting it. *State v. Salazar,* 181 Ariz. 87, 91, 887 P.2d 617, 621 (App.1994); *see* Ariz.R.Evid. 403.

¶ 29 Shortly after *Treadaway,* our supreme court recognized another exception in child molestation cases to the general rule excluding character evidence. It held that prior acts committed by a defendant against the same victim may be admitted to show the defendant's disposition toward that particular victim.

> In a case involving a sex offense committed against a child, evidence of a prior similar sex offense committed against the same child is admissible to show the defendant's lewd disposition or unnatural attitude toward the particular victim.

*State v. Garner,* 116 Ariz. 443, 447, 569 P.2d 1341, 1345 (1977).

¶ 30 In the years since *Garner,* our courts have continued to recognize evidence of a defendant's lewd disposition toward a particular victim as a distinct exception to the general rule excluding character evidence. *See State v. Rojas,* 177 Ariz. 454, 460, 868 P.2d 1037, 1043 (App.1993); *State v. Jones,* 188 Ariz. 534, 539, 937 P.2d 1182, 1187 (App. 1996); *State v. Alatorre,* 191 Ariz. 208, 213, ¶ 16, 953 P.2d 1261, 1266 (App.1998).

¶ 31 We do not believe, however, that this avenue of admission obviates the need to screen such evidence pursuant to the framework established in Rule 404(c). In *Garner* cases as in other cases of sexual misconduct, the prosecution undertakes to prove a defendant's uncharged acts in order to establish "an aberrant sexual propensity to commit the crime charged," the general element listed in Rule 404(c)(1)(B); in a *Garner* case, this element is simply manifest more pointedly as a lewd disposition toward a particular victim. As for the evidentiary safeguards codified in Rule 404(c)(1)(A)—assurance that the other act indeed occurred—and 404(c)(1)(C)—assurance that probative need over-balances the potential for unfair prejudice—these concerns are no less pressing in *Garner* cases than in others.

¶ 32 Although it did not do so at trial, the State now argues that the testimony about the other molestations is not uncharged act evidence at all, but rather "intrinsic" to the crimes charged. *State v. Baldenegro,* 188 Ariz. 10, 15, 932 P.2d 275, 280 (App.1996). Evidence of other acts may qualify as intrinsic when it is "inextricably intertwined" with evidence of a crime charged, when the charged and uncharged acts are part of a "single criminal episode," or when the other acts were "necessary preliminaries" to the crime charged. *Id.* For example, furnishing minors with drugs and alcohol is classic "grooming" activity in molestation cases because it "fosters continued acquiescence to appellant's sexual crimes." *State v. Grainge,* 186 Ariz. 55, 58, 918 P.2d 1073, 1076 (App.1996).

---

**3.** The term *"Treadaway* hearing" became common parlance in Arizona courtrooms, referring to pre-trial hearings at which experts were asked whether earlier instances of sexual misconduct by defendants showed that they had a continuing propensity to commit aberrant sexual acts. *See State v. Bailey,* 166 Ariz. 116, 117, 800 P.2d 982, 983 (App.1990). The comment to Rule 404(c) states that subsection (1)(B) was meant to eliminate the requirement for such testimony.

¶ 33 We generally decline to consider an evidentiary theory that is advanced for the first time on appeal. *State v. Bolton,* 182 Ariz. 290, 304, 896 P.2d 830, 844 (1995). However, even if the State had advanced its "intrinsic evidence" theory at trial, that would not have relieved the need for careful examination of the evidence. Although some of Defendant's activities, such as the sleepovers, might be characterized as grooming, our courts have never held that discrete offenses, identical to but occurring at different times than the ones charged, are intrinsic. Such a holding would sweep away the carefully constructed analytical framework of Rule 404(c) and Rule 403 and permit the introduction of evidence too probatively weak and/or too likely to be unfairly prejudicial to meet the strictures of those rules.

¶ 34 Nor would it exempt *Garner* evidence from careful screening to assert that it is not only admitted as probative of "a character trait giving rise to an aberrant sexual propensity to commit the crime charged," *see* Ariz.R.Evid. 404(c)(1)(B), but also as probative of intent, preparation, or plan. *See* Ariz.R.Evid. 404(b) (establishing potential admissibility of uncharged act evidence to show matters other than character such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident").

¶ 35 Well before the adoption of Rule 404(c), our supreme court cautioned about the danger of admitting prior act evidence pursuant to Rule 404(b), especially in child molestation cases, without first determining its potential for unfair prejudice:

[W]e remind counsel and trial courts in future cases that the inquiry is not complete when a finding on Rule 404(b) admissibility is made. The rules of evidence are designed to provide fair trials, and trial judges should not treat Rule 403 as an empty promise. There will be situations in which evidence sought to be introduced is more prejudicial than probative, and those situations are very likely to arise in the prior bad act context. *When called upon to weigh probative value against unfair prejudice under Rule 403, a trial judge must assure the state is not permitted to prove a defendant's guilt of one act through excessively prejudicial evidence of other acts.*

*State v. Ives,* 187 Ariz. 102, 111, 927 P.2d 762, 771 (1996) (emphasis added). *See Salazar,* 181 Ariz. at 91–92, 887 P.2d at 621–22 (court has special obligation to balance potential prejudice of prior acts in molestation case); *State v. Taylor,* 169 Ariz. 121, 125, 817 P.2d 488, 492 (1991) (quoting *State v. Moreno,* 153 Ariz. 67, 69, 734 P.2d 609, 611 (App.1986)) (a Rule 403 balancing " 'is important in analyzing any Rule 404(b) evidentiary question' "); *Terrazas,* 189 Ariz. at 583, 944 P.2d at 1197 (characterizing Rules 402, 403, and 105 as protective provisions in 404(b) cases that prevent the admission of unfairly prejudicial other acts); *Vigil,* 195 Ariz. at 193, ¶ 26, 986 P.2d at 226 (requiring Rule 403 balancing of uncharged acts otherwise admissible under Rule 404(b)).

¶ 36 In *Taylor,* our supreme court similarly cautioned that,

because of the risk of improper use, the trial judge has a *special obligation* to insure that [the] probative value of the evidence for the purpose offered is sufficiently great in the context of the case to warrant running that risk. *The discretion of the trial judge under Rule 403 to exclude otherwise relevant evidence because of the risk of prejudice should find its most frequent application in this area.*

*Taylor,* 169 Ariz. at 125, 817 P.2d at 492 (quoting M. Udall, J. Livermore, P. Escher, G. McIlvain, *Arizona Practice: Law of Evidence* § 84 at 179–80 (3d ed.1991)) (emphasis added). *See also Salazar,* 181 Ariz. at 91, 887 P.2d at 621.

¶ 37 In summary, although the *Garner* line of cases suggests the probative potential of uncharged act evidence to establish a lewd disposition toward a given victim, it does not establish a wholesale or unmonitored avenue of admission. Nothing in those cases relieves the need to consider, uncharged act by uncharged act, whether the probative value of the particular evidence over-balances its potential for unfair prejudice. *See id.* (quoting 1 J. Weinstein and M. Berger, *Weinstein's Evidence* § 404[18] at 404–123 to –124 (1989)) (in Rule 404 cases, "the onus of show-

ing that prejudice is over-balanced by need and good faith should rest on the Government") (emphasis omitted). And in a consolidated case like this, with many very young victims, each testifying to multiple uncharged molestations, the potential for unfairness is particularly high.[4] Although the court attempted to meet the prospect of cumulative prejudice by instructing the jury to consider uncharged acts only as bearing upon Defendant's propensity toward their respective victim and not toward other victims in the case, this instruction did not relieve the need to properly evaluate and balance the evidence before admitting it at all. Because the court did not perform this critical function, it abused its discretion in allowing the evidence of the uncharged acts before the jury.

### HARMLESS ERROR

¶ 38 We must next consider whether the trial court's error was harmless. Error is harmless only if we are satisfied beyond a reasonable doubt that it did not affect the verdicts. *See Neder*, 527 U.S. at 15, 119 S.Ct. 1827; *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993).

¶ 39 It is virtually impossible, when the trial court has omitted to screen so large a volume of other act evidence under Rules 404(c) and 403, for an appellate court to determine after trial whether and to what extent the evidence might have withstood such screening had it been done.

¶ 40 This does not altogether preclude harmless error analysis, however. Rather, we consider whether, assuming for the purpose of disposition that the evidence in question should have been excluded, we may conclude beyond a reasonable doubt that the evidence did not affect the verdicts. Here we may draw that conclusion with respect to the verdicts on counts 5 and 6, the molestation charges regarding Abby H., but not with respect to the verdict on count 11, the indecent exposure charge regarding Sarah H.

### 1. Counts 5 and 6

■ ¶ 41 Abby H. testified, as did the other girls, that Defendant had inappropriately and repeatedly touched her. But the charges against Abby H. are different from those regarding the other girls in two important aspects: they were the only molestation charges for which the jury found Defendant guilty, and they were the only charges for which the victim's testimony was substantially corroborated with physical proof. Abby H. specifically testified that Defendant had on at least two occasions digitally penetrated her and "wiggled" his finger around. Dr. Strickland testified that Abby H.'s hymen was scarred and that such scarring could result only from a surgical procedure, which Abby had not undergone, or from repeated episodes of "abrasive rubbing." Dr. Strickland ruled out masturbatory contact as the cause of the scarring because such rubbing would be painful rather than pleasurable.

¶ 42 Because Abby H. testified that Defendant had molested her as charged, and Dr. Strickland testified that the molestations could only have happened in the manner that Abby H. described, the properly admitted evidence regarding counts 5 and 6 gave very substantial support to the verdicts. Moreover, we consider the strength of this evidence against the backdrop that the jury acquitted Defendant of the molestation charges regarding each of the other girls. Given the strength of the evidence against Defendant on Counts 5 and 6, the fact that the uncharged act evidence did not affect the verdicts on the other molestation charges, and the fact that the jury, by its verdicts, demonstrated a considered effort to sift through the evidence, victim by victim and count by count, we conclude beyond a reasonable doubt that the admission of the uncharged act evidence was harmless with respect to the verdicts on Counts 5 and 6.

### 2. Count 11

■ ¶ 43 The properly admitted evidence supporting the indecent exposure count, in

---

4. Indeed, during voir dire, five members of the jury venire indicated that the "sheer number of alleged victims" caused them to doubt whether they could fairly and impartially consider the evidence. Likewise, the trial court surely had the potential for unfair prejudice in mind when it initially advised the State, "I am not going to permit the victims to get up here and say that this happened, you know, 20, 30, 15 or whatever times during those time periods." *Supra* ¶ 4.

contrast, is weak. Sarah H. testified that the incident of exposure occurred in Defendant's car and that Jamie R. was present when it happened. Not only did the jury fail to find Sarah H.'s testimony sufficiently credible to convict Defendant on counts 8, 9, and 10, the molestation and attempted molestation charges regarding Sarah H., but Jaime R. could not recall the alleged exposure incident as Sarah H. had recounted it. Defendant did testify that Sarah H. had seen his genitals, but he referred to a completely different incident. He testified that Sarah H. and others snuck up on him while he was urinating. And though his description of his subsequent remarks to the girls establishes that he did not want any adults to learn that it had happened, it no more supports the inference that he recklessly permitted the exposure than the counter-inference that the exposure was merely inadvertent and that he scolded the girls so that it would not happen again.

¶ 44 Neither Sarah H.'s nor Defendant's testimony overwhelmingly supports the indecent exposure verdict. Moreover, we cannot even determine from the amended indictment or the verdict forms which of the two incidents—the alleged exposure in the car or the urination—provided the basis for the jury's verdict. Nor, indeed, does the State in its brief argue which of these incidents provided the basis for the verdict. Lacking the solid evidence on count 11 that the record provides on counts 5 and 6, we cannot conclude beyond a reasonable doubt that the uncharged act evidence did not affect the indecent exposure verdict.

### CONCLUSION

¶ 45 The court abused its discretion in neglecting to perform Rule 404(c) screening and a Rule 403 balancing test before admitting a large volume of uncharged acts evidence at trial. We conclude that this error did not affect the verdicts on counts 5 and 6. We cannot, however, conclude that the verdict on count 11 was unaffected. Accordingly, we affirm Defendant's convictions and sentencing on counts 5 and 6, and reverse Defendant's conviction and sentence on count

11. We remand for proceedings consistent with this decision.

CONCURRING: PHILIP E. TOCI, Presiding Judge, JAMES B. SULT, Judge.