NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LEVI EULALIO MADRIGAL, *Appellant.*

No. 1 CA-CR 19-0264
FILED 8-20-2020

Appeal from the Superior Court in Yuma County
No.  S1400CR201700005
The Honorable David M. Haws, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jennifer L. Holder
*Counsel for Appellee*

DM Cantor, Phoenix
By John E. Hudson, Courtney R. Sullivan
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Chief Judge Peter B. Swann[1] joined.

---

**C A M P B E L L**, Judge:

**¶1**  Levi Madrigal appeals his convictions and sentences for sexual exploitation of a minor. For the following reasons, we affirm.

### BACKGROUND[2]

**¶2**  After receiving a tip that an email contained images of child pornography, police officers traced the recipient's internet protocol ("IP") address to Madrigal's residence. Based on that information, police officers obtained and executed a search warrant on the home (shared by Madrigal, his mother, and brother), seizing four electronic devices: a desktop computer (from Madrigal's bedroom), a tablet, a thumb drive, and a cellular phone (from Madrigal's person).

**¶3**  Through forensic analysis, a detective located the images associated with the suspect email on the computer. He also found: (1) more than 2,000 other images of child pornography on the computer, stored in both the public, "basic user" profile and the private, "owner" profile; (2) a web browser on the computer that permitted access to the dark web while blocking IP address tracing; and (3) eight images of child pornography on the cellular phone. Comparing the timestamps for the child pornography downloaded to the computer with mapping data from the cellular phone, and given the absence of any programs on the computer that permitted remote access, the detective determined the child pornography was

---

[1]  Chief Judge Peter B. Swann replaces the Honorable Kenton D. Jones, who was originally assigned to this panel. Judge Swann has read the briefs and reviewed the record.

[2]  We view the facts in the light most favorable to sustaining the verdicts. *State v. Payne*, 233 Ariz. 484, 509, ¶ 93 (2013).

downloaded to the computer only when Madrigal was in the vicinity of the computer.

**¶4**        The State charged Madrigal with 14 counts of sexual exploitation of a minor (with each count referring to one specific image found on either the cellular phone or computer). The State also alleged several aggravating factors.

**¶5**        At trial, Madrigal's mother testified that caregivers for her adult special-needs son, Madrigal's brother, had access to the computer. She also testified that she had the computer serviced by a repair technician several times.

**¶6**        Taking the stand in his own defense, Madrigal denied viewing any of the child pornography found on the computer. During cross-examination, the prosecutor asked Madrigal why he had child pornography on his cellular phone, and Madrigal responded, "I cannot explain that answer."

**¶7**        After a 12-day trial, a jury found Madrigal guilty as charged. The jury also found one aggravating circumstance—that the victim depicted in each image was under 15 years of age. The superior court weighed the aggravating and mitigating factors and sentenced Madrigal to consecutive, mitigated terms of ten years' imprisonment on each count. Madrigal timely appealed.

## DISCUSSION

### I.        Evidentiary Rulings

**¶8**        Madrigal challenges the superior court's admission of evidence of uncharged acts. We generally review the admission of other-act evidence for an abuse of discretion. *State v. Garcia*, 200 Ariz. 471, 475, ¶ 25 (App. 2001). Because Madrigal did not object to the admission of the other-act evidence at trial, we review only for fundamental, prejudicial error. *State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19-20 (2005).

**¶9**        Fundamental error goes to the foundation of the case, error that deprives the defendant a right essential to his or her defense, or error of such magnitude that the defendant could not possibly have received a fair trial. *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). Under fundamental error review, the defendant bears the burden of demonstrating both error and resulting prejudice. *Henderson*, 210 Ariz. at 567, ¶ 20.

¶10  In general, "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person[.]" Ariz. R. Evid. ("Rule") 404(b). But Rule 404(c) carves out an exception to this general prohibition, permitting the introduction of other-act evidence when the defendant is charged with a sexual offense and the evidence is "relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged."

¶11  Before admitting evidence of other acts, the superior court must find that: (1) sufficient evidence permits the trier of fact to find the defendant committed the other act; (2) the other-act evidence provides a reasonable basis to infer that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the crime charged; and (3) the probative value of the other-act evidence is not substantially outweighed by a danger of unfair prejudice or confusion of the issues under Rule 403. Ariz. R. Evid. 404(c).

¶12  Before trial, the State noticed its intent to introduce other-act evidence of Madrigal's possession of 28 child pornography photographs and videos to demonstrate his aberrant sexual propensity to commit the crimes charged. The State identified the file names for each of the photographs and videos it intended to introduce as other-act evidence. Defense counsel objected and requested a hearing, arguing, among other things, that the probative value of the other-act evidence was substantially outweighed by the danger of unfair prejudice.

¶13  Defense counsel conceded, for purposes of the hearing, that the photographs and videos at issue depicted minors engaged in exploitive exhibition or other sexual conduct but argued the State had failed to demonstrate Madrigal knowingly possessed the materials. After the hearing, the superior court found: (1) clear and convincing evidence that Madrigal committed the other acts; (2) the other acts provided a reasonable basis to infer that Madrigal "has a character trait giving rise to an aberrant sexual propensity to commit the crime charged"; and (3) the evidentiary value of the other-act evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or other Rule 403 factors.

¶14  The superior court also noted the other-act evidence "*may* be cumulative," and reserved "for a date and time closer to trial" whether to limit the amount of other-act evidence "presented to a jury." Defense counsel then asked whether the court intended to continue "the [Rule] 403 analysis," and the court reiterated that the other-act evidence was relevant

and admissible under Rule 404(c), but the number of admissible photographs and videos "may be" limited at trial under Rule 403.

¶15　　　Three months later, the parties stipulated that both the images related to the charges and the other-act photographs and videos: (1) were admissible; (2) depicted real people, not computer-generated images; and (3) showed children engaged in sexually exploitive acts or acts of display without a legal purpose. The parties also stipulated that neither would be limited in displaying, discussing, or publishing the images to the jury.

¶16　　　In advance of trial, the State disclosed that it would call law enforcement officials to testify about separate, unrelated investigations of the other-act photographs and videos. Before the first officer took the stand, defense counsel challenged the relevance of the unrelated investigations, while acknowledging that evidence identifying the children depicted in the other-act images as actual victims was relevant. When asked to respond, the prosecutor clarified that she would elicit details of the investigations only "as necessary for context."

¶17　　　The first officer testified that she investigated the creation and distribution of a series of pornographic images depicting two preschool-aged siblings. When investigators located the minor victims, the officer interviewed them both. While the younger sibling described sexual abuse inflicted on her by her father, the older child, whom the officer suspected had been "heavily groomed," disclosed only that her father had her "dress up" and pose for photographs. At that point, the prosecutor presented the officer one of the photographs found on Madrigal's computer, and she confirmed that the photograph depicted the younger sibling victim. Defense counsel did not object to any of the officer's testimony. But, he asserted a lack of foundation when the prosecutor moved to admit the photograph into evidence, and the superior court sustained his objection.

¶18　　　Next, a second officer testified concerning her investigation of child pornography documenting the sexual abuse of a young girl. When she was presented a series of photographs found on Madrigal's computer, the officer testified that she recognized the person depicted as the eight-year-old victim she interviewed during her investigation. At that point, the prosecutor requested permission to elicit descriptions of the photographs rather than publishing the images to the jury. The court granted the prosecutor's request and the officer provided a brief description of each image, without objection.

¶19     The next day of trial, defense counsel complained that the prosecutor had elicited testimony that "created prejudice" and "confusion." Defense counsel argued that the officers' "narrative" testimony regarding their investigations of other-act evidence was both irrelevant and prejudicial. Finding the officers' testimony was relevant, the court nonetheless instructed the prosecutor to limit her questions only to those establishing the identity and age of the children involved.

¶20     Proceeding with that admonition, a third officer testified, without objection. His investigation involved a series of photographs and videos that documented the sexual abuse of another eight-year-old girl. He was presented several images and videos found on Madrigal's computer and testified that the images and videos depicted the young victim he had interviewed during his investigation. And without objection, the officer described the sexual abuse depicted in the photographs and videos.

¶21     Before testimony resumed on the next day of trial, defense counsel asked the superior court "to restrict" the fourth officer's testimony as it had "in prior testimony"—limiting the scope of questioning to the identification and age of the victims depicted in the other-act photographs and videos. After the court agreed to "follow the same procedure," a fourth officer testified that he investigated a series of child pornography photographs and videos that documented the sexual abuse of children, ages three and eight. When shown images found on Madrigal's computer, the officer identified the depicted individuals as the victims from his investigation and, without objection, provided brief descriptions of the sexual abuse documented in the photographs. At that point, the prosecutor presented the officer with a series of videos, introduced by their sexually explicit file names, and asked him to confirm that the individuals depicted were the same minor victims. The officer did so, without objection.

¶22     Later, the detective who conducted the forensic analysis of Madrigal's computer and cellular phone explained how he discovered the charged and other-act photographs and videos. With that foundation, the court admitted the corresponding photograph and video exhibits into evidence without objection.

¶23     Madrigal first contends that the superior court improperly admitted the other-act evidence without assessing its probative value and prejudicial effect. Although he acknowledges that the court "properly issue[d]" a pretrial ruling on the admissibility of the other-act evidence "pursuant to the requirements of Rule 404(c)," Madrigal argues the court failed to fully analyze the other-act evidence under Rule 403. The record

clearly reflects that the court expressly conducted a Rule 403 analysis and found the probative value of the other-act evidence was not substantially outweighed by the danger of unfair prejudice. While the court notified the parties that it may revisit the issue at trial and limit the number of other-act evidence "presented to [the] jury," in the event it found the material cumulative, its pretrial Rule 403 ruling was unqualified. Having made the requisite Rule 404(c) findings, which necessarily included a Rule 403 analysis, the court did not err, much less commit fundamental error, by failing to *sua sponte* revisit the admissibility of the other-act evidence under Rule 403 at trial.

¶24        Next, Madrigal asserts that the officers' other-act testimony was largely irrelevant, given the parties' pretrial stipulation that the other-act evidence depicted child pornography. Evidence is relevant if it has "any tendency" to make a fact of consequence in determining the action "more or less probable than it would be without the evidence." Ariz. R. Evid. 401. Relevant evidence is admissible unless it is otherwise precluded by the federal or state constitution, an applicable statute, or rule. Ariz. R. Evid. 402.

¶25        To begin, stipulations are not binding on a jury and "do not relieve the [prosecution] of its burden of proving each element of an offense beyond a reasonable doubt." *State v. Williamson*, 236 Ariz. 550, 564, ¶ 50 (App. 2015). Given the nature of the charges, evidence about the victims of the other acts tended to make it more likely that Madrigal knowingly possessed the charged child pornography, namely, their ages and the fact that they are actual, living persons rather than computer-generated images. Conceding that the biographical information about the other-act victims was relevant, Madrigal argues the testifying officers unnecessarily relayed inflammatory details, thereby "humaniz[ing] the subjects of the photos."

¶26        To support this claim, Madrigal cites officers' testimony: (1) describing the sexual abuse depicted in the other-act photographs and videos; and (2) recounting the sexually explicit file names used to label some of the other-act videos found on Madrigal's computer. The officers' brief descriptions of the sexual abuse documented in the photographs and videos, as well as the sexually explicit file names (that in many instances identified both the age of the victims and the sexual abuses inflicted), were wholly relevant, tending to show that Madrigal had a character trait giving rise to an aberrant sexual propensity to commit sexual exploitation of a minor. That is, both the testimony and the file names tended to prove that Madrigal knowingly possessed the charged images, which depicted the sexual abuse of young, prepubescent girls. As noted by the superior court, given the nature of the charges, relevant evidence necessarily included

sexually explicit material. *See State v. Gerlaugh*, 134 Ariz. 164, 169 (1982) (holding gruesome and inflammatory evidence may be admitted if it is material to some aspect of the case so long as it is not admitted for the sole purpose of inflaming the jury). Stated differently "there is nothing sanitary" about possessing images and videos depicting the sexual abuse of children. *State v. Cota*, 229 Ariz. 136, 147, ¶ 46 (2012) (quoting *State v. Rienhardt*, 190 Ariz. 579, 584 (1997)). The probative value of this other-act evidence was substantial, and although it was also undoubtedly prejudicial, it did not suggest that the jury should decide the matter on an improper basis. *See State v. Mott*, 187 Ariz. 536, 545 (1997) ("Unfair prejudice results if the evidence has an undue tendency to suggest decision on an improper basis, such as emotion, sympathy, or horror.").[3]

¶27        Finally, Madrigal argues the number of other-act photographs and videos was cumulative, particularly considering the forensic analyst's testimony that more than 2,000 images of child pornography were found on the computer. Although the forensic analyst testified that a large collection of child pornography was found on Madrigal's computer, he did not provide any details regarding the nature of those images. As discussed, the other-act evidence was particularly probative of the charged offenses, demonstrating not only that Madrigal collected sexual images of children under age 15, but that he possessed photographs and videos documenting the sexual abuse of very young, prepubescent girls. In any event, on this record, Madrigal has failed to demonstrate prejudice from the number of photographs and videos presented to the jury. *See State v. Weatherbee*, 158 Ariz. 303, 305 (App. 1988) (explaining the erroneous admission of evidence is harmless when the improperly admitted evidence is "entirely cumulative"). Therefore, the superior court did not commit fundamental error by admitting the other-act evidence.

---

[3]        To the extent Madrigal also challenges the officers' testimony concerning the perpetrators involved in the creation of the other-act child pornography, we note the prosecutor made no attempt to tie those individuals directly to Madrigal. Equally important, defense counsel elicited testimony that the officers who investigated the other-act child pornography had no knowledge of or involvement in this case. Therefore, Madrigal has failed to demonstrate any prejudice from this testimony.

## II. Alleged Prosecutorial Misconduct

¶28 Madrigal contends the superior court improperly denied both his motion for mistrial and his request for a curative instruction, each predicated on a claim of prosecutorial misconduct.

¶29 Because a mistrial is "the most dramatic remedy for trial error," it should be granted only when "justice will be thwarted unless the jury is discharged and a new trial granted." *State v. Adamson*, 136 Ariz. 250, 262 (1983). The superior court is in the best position to determine whether a declaration of mistrial is required. *State v. Koch*, 138 Ariz. 99, 101 (1983). Accordingly, we uphold a court's decision to grant or deny a motion for mistrial absent a clear abuse of discretion. *Id.*; *see also State v. Jones*, 197 Ariz. 290, 304, ¶ 32 (2000).

¶30 To begin her closing argument, the prosecutor told the jurors that "Madrigal is fueling the child porn industry." After briefly mentioning some of the governmental entities and private organizations that work together to combat child pornography, the prosecutor outlined the evidence presented at trial. While discussing the evidence specific to each charge, the prosecutor emphasized that the admitted exhibits showed "real children being sexually abused" and stated, without objection, that Madrigal had "masturbat[ed]" to the images. When she ended her argument, the prosecutor restated, without objection, that "Madrigal is fueling the child porn industry." Noting all industries depend on consumer demand, the prosecutor implored the jurors to join "the collective effort to fight child pornography by finding [Madrigal] guilty."

¶31 Once the prosecutor finished her closing argument, defense counsel moved for a mistrial, arguing the prosecutor's statement urging the jurors to fight the child pornography industry by convicting Madrigal was improper. In response, the prosecutor pointed to the strength of the State's evidence and the final jury instructions that admonished the jurors to consider only the evidence presented at trial. After hearing from counsel, the superior court denied the motion for mistrial, finding the prosecutor's argument was not prejudicial and the jury had been instructed that argument is not evidence.

¶32 Following that denial, defense counsel objected to the prosecutor's assertion that Madrigal had masturbated to the child pornography and asked the superior court to "advise the jury" that the prosecutor's reference to masturbation was "not based on evidence." Implicitly finding the prosecutor's assertion was a reasonable inference, the

court overruled the objection and declined to issue any admonition to the jury.

**¶33**         Challenging the denial of his request for a curative instruction, Madrigal contends the prosecutor engaged in misconduct when she referenced masturbation. To determine whether an argument constitutes misconduct, we consider the context in which it was made and consider two factors: "(1) whether the prosecutor's statements called to the jury's attention matters it should not have considered in reaching its decision and (2) the probability that the jurors were in fact influenced by the remarks." *State v. Goudeau*, 239 Ariz. 421, 466, ¶ 196 (2016) (quoting *State v. Nelson*, 229 Ariz. 180, 189, ¶ 39 (2012)). While prosecutors may not make unsupported "insinuations," they may argue all reasonable inferences from the evidence. *State v. Morris*, 215 Ariz. 324, 336, ¶ 51 (2007) (quoting *State v. Hughes*, 193 Ariz. 72, 85, ¶ 59 (1998)).

**¶34**         In this case, the State presented no direct evidence that Madrigal masturbated to the child pornography at issue. But read in context, the prosecutor's fleeting reference to masturbation merely alluded to a matter of common knowledge to members of the general public, namely, that child pornography is acquired for the possessor's sexual gratification. *See State v. Williams*, 107 Ariz. 262, 264 (1971) (explaining the "range of discussion and argumentation is very wide and matters of common knowledge may be referred to"). Because the prosecutor's passing statement was a reasonable inference based on the evidence and common knowledge, it did not rise to the level of misconduct and no curative instruction was required.

**¶35**         Second, Madrigal contends the prosecutor improperly appealed to the jurors' passions when she suggested they could combat child pornography by rendering a guilty verdict. Although prosecutors are given "wide latitude" in presenting closing argument to the jury, *Goudeau*, 239 Ariz. at 466, ¶ 196, that latitude is not unlimited. A prosecutor exceeds permissible bounds by: (1) using "remarks to inflame the minds of jurors with passion or prejudice," or (2) urging jurors to convict a defendant to protect the community independent of the defendant's guilt or innocence. *See State v. Herrera*, 174 Ariz. 387, 396-97 (1993) (internal quotation omitted).

**¶36**         Here, the prosecutor's remark, that jurors could join "the fight" against child pornography by returning a guilty verdict, arguably had emotional overtones. But "some amount of emotion in closing argument is not only permissible, it is to be expected." *State v. Zaragoza*, 135 Ariz. 63, 68 (1983). At no point did the prosecutor urge the jurors to convict

Madrigal "for reasons wholly irrelevant to his own guilt or innocence." *Herrera*, 174 Ariz. at 397 (quoting *United States v. Monaghan*, 741 F.2d 1434, 1441 (D.C. Cir. 1984)). Rather, read in context, the prosecutor's call to fight against the child pornography industry was entirely predicated on the strength of the State's evidence that Madrigal had committed the charged acts beyond a reasonable doubt. *See id.* at 396-97 (finding a prosecutor's argument urging a jury to protect society through its verdict was permissible because it was not independent of the State's argument that the evidence proved the defendant's guilt beyond a reasonable doubt). In this case, the prosecutor's closing argument did not exceed permissible bounds. Moreover, the superior court instructed the jury that the attorneys' comments in closing argument were not evidence to be considered in reaching their verdicts, and we presume that the jurors followed the court's instructions. *See State v. Prince*, 226 Ariz. 516, 537, ¶ 80 (2011). Accordingly, even if the prosecutor's comments were improper, the superior court's final instructions "negated their effect." *Morris*, 215 Ariz. at 337, ¶ 55.

¶37 Finally, although Madrigal argues the cumulative effect of the prosecutor's conduct caused him prejudice, having found no action by the prosecutor that constitutes misconduct, "there can be no cumulative effect of misconduct sufficient to permeate the entire atmosphere of the trial with unfairness." *State v. Bocharski*, 218 Ariz. 476, 492, ¶ 75 (2008). Therefore, the superior court did not abuse its discretion by denying Madrigal's motion for mistrial.

## CONCLUSION

¶38 For the foregoing reasons, we affirm Madrigal's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA