NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LEWIS SCOTT ELKINS, *Appellant.*

No. 1 CA-CR 21-0281
FILED 2-24-2022

Appeal from the Superior Court in Yavapai County
No. P1300CR201801712
The Honorable Debra R. Phelan, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Attorney General's Office, Phoenix
By Brian R. Coffman
*Counsel for Appellee*

Law Office of Nicole Countryman, Phoenix
By Nicole Countryman
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Presiding Judge Paul J. McMurdie delivered the Court's decision, in which Vice Chief Judge David B. Gass and Judge Angela K. Paton joined.

---

**M c M U R D I E**, Judge:

¶1          Lewis Scott Elkins appeals from his convictions and sentences for child molestation and sexual abuse of a minor. We find no reversible error and affirm.

### FACTS[1] AND PROCEDURAL BACKGROUND

¶2          About a year after his divorce, Elkins began to engage in sexual behavior toward his daughter, 11-year-old Chloe,[2] when they moved to Bend, Oregon. His behavior gradually escalated. He had her sleep in his bed. He had her sleep undressed, he asserted, because she would be more comfortable without clothes. He had her shower with him. He touched her inappropriately while performing "massages" while she was undressed. He kissed her on the lips and said that he knew she wanted him to on at least one occasion. He told her not to tell her brothers about his behavior, claiming they would not understand. Except for a brief time when Elkins dated an adult woman, he continued these grooming behaviors when the family lived in Bend.

¶3          Around April or May 2001, when Chloe was 13 or 14 years old, the family moved to Diamond Valley, Arizona. Chloe's and Elkins' rooms were down a hall behind a door that Elkins often locked. Because he had Chloe sleep in his bed, Elkins would have her mess up her covers so it would look like she slept in her bed.

¶4          He became more brazen in Diamond Valley. One night, after a purported massage, he ejaculated on Chloe, woke her, and told her to

---

[1]       We view the facts in the light most favorable to upholding the judgment. *State v. Mendoza*, 248 Ariz. 6, 11, ¶ 1, n.1 (App. 2019).

[2]       We use pseudonyms to protect the identities of the victim and witnesses.

clean herself. He had Chloe grab his penis on another occasion. On another, he digitally penetrated her.

¶5        The sexual encounters stopped when Elkins met Kristine, whom he later married. Chloe was 14, and Elkins only referenced his conduct years later when Chloe married. He told Chloe not to tell her husband because he would not understand.

¶6        Chloe testified that she blamed herself for Elkins' advances, so she told no one about it and permitted her two children to visit him. But Chloe told her husband when Chloe's eldest daughter was nearly eight years old, around the age when Elkins began abusing her. She also told her best friend, who was married to one of her brothers. The friend told Chloe's brothers.

¶7        One of Chloe's brothers, Cooper, drove from California to Elkins' residence to confront him. With Kristine present, Cooper questioned Elkins about his past conduct with Chloe, including the inappropriate massages and three incidents in Diamond Valley. Elkins had an excuse for each incident. When Elkins ejaculated on Chloe, Elkins said that he and Chloe were wearing underwear and that the ejaculate resulted from nocturnal emission. Elkins denied making Chloe grab his penis but admitted that he once had her touch it. He denied digitally penetrating her.

¶8        While living in Oregon, Chloe reported Elkins to the police. She was directed to report the acts committed in Arizona to Arizona's authorities, so she contacted Detective Mattox at the Yavapai County Sheriff's Office. Mattox contacted Detective Abbott, who worked in Oregon, to arrange for Chloe to confront Elkins by phone while Abbott recorded the call. Chloe questioned Elkins about his past behavior toward her during the call, particularly in Diamond Valley. In the recorded call, Elkins essentially reiterated what he said to Cooper.

¶9        A grand jury indicted Elkins for sexual conduct with a minor via digital penetration (Count 1); molestation of a child for when he made her touch his penis (Count 2); and sexual abuse for when he touched her breast during one of his massages (Count 3).

¶10        Elkins moved in limine to preclude any evidence of uncharged sexual misconduct under Arizona Rule of Evidence 404(c). Elkins argued that the State did not timely disclose such evidence as required by Arizona Rule of Criminal Procedure 15.1 and alternatively argued that such evidence could not be admitted because the court had not held a hearing to resolve the matter. In its response, the State asserted that

it had made a timely and adequate disclosure and disputed Elkins'
assertion that Rule 404(c)(1) required an evidentiary hearing.

¶11            After considering the motion in limine, response, and reply,
the court determined it could not rule solely on the pleadings. The parties
stipulated to the court's review of the confrontation call and transcripts of
witness interviews. The court reviewed Chloe's confrontation call
transcripts, her call with Mattox, Mattox's call with Cooper, and Cooper's
interview by the State and defense counsel. After conducting a factor
analysis under Rule 404(c), the court held that the State's other-acts
evidence was admissible under Rules 404(c) and 404(b). The court also
concluded that the State had provided timely and adequate disclosure.
Thus, the court denied the motion in limine.

¶12            At the trial, the State played an audio recording of the
confrontation call. Chloe testified about the confrontation call and Elkins'
charged and uncharged acts. Cooper also testified about his confrontation
with Elkins.

¶13            During its deliberations, the jury requested additional
instructions about finding other acts with clear and convincing evidence to
inform its deliberations on whether it could find beyond a reasonable doubt
that Elkins committed the charged acts. The court reopened the argument
so counsel could explain the two standards. Both attorneys explained that
the jury could not convict Elkins simply because they found he had
committed the other acts. A finding that he committed the other acts would
not lessen the State's burden to prove Elkins' guilt beyond a reasonable
doubt.

¶14            The jury convicted Elkins on Counts 2 and 3 but could not
agree on Count 1, so the court declared a mistrial for that count. The jury
found aggravating circumstances for Counts 2 and 3 due to physical,
emotional, or financial harm to the victim. The court considered the
aggravators and mitigators, such as Elkins' lack of criminal history. It
sentenced him to a presumptive sentence of 17 years for Count 2 and a
suspended sentence with lifetime probation for Count 3.

¶15            Elkins appealed. We have jurisdiction under §§ 12-2101(A)(1),
13-4031, and -4033.

## DISCUSSION

¶16            Generally, other-acts evidence is not admissible to prove
action in conformity with character. Ariz. R. Evid. 404(a). But the State may

use other-acts evidence to show that a criminal defendant had a character trait giving rise to an aberrant sexual propensity to commit a charged sexual offense under certain conditions. Ariz. R. Evid. 404(c). Two conditions are at issue in this appeal. First, whether the court correctly found clear and convincing evidence that Elkins committed the other act. Ariz. R. Evid. 404(c)(1)(A); *see State v. James*, 242 Ariz. 126, 131, ¶ 17 (App. 2017). And second, whether the danger of unfair prejudice substantially outweighed the probative value derived from the other-acts evidence. Ariz. R. Evid. 404(c)(1)(C); Ariz. R. Evid. 403.

**¶17** Elkins argues the court could not have found by clear and convincing evidence that the other acts occurred without an evidentiary hearing, and the court erred by admitting evidence whose probative value was substantially outweighed by the risk of confusing the jury. He maintains that this alleged error denied him the right to a fair trial. We review the admission of evidence under Rule 404 for abuse of discretion and address each of Ekins' arguments in turn. *State v. Garcia*, 200 Ariz. 471, 475, ¶ 25 (App. 2001).

## A. The Court Did Not Err by Declining to Hold an Evidentiary Hearing.

**¶18** Whether a court must hold a hearing to determine the admissibility of other-acts evidence depends on the evidence available to the court and whether a dispute about an issue of material fact existed for the superior court to resolve. *James*, 242 Ariz. at 132–33, ¶¶ 18–24. For example, in *James*, the defendant requested an evidentiary hearing to determine whether other-acts evidence was admissible. *Id.* at 132, ¶ 18. Instead, the court relied on a transcript of a forensic interview and a confrontation call between the defendant and victim. *Id.* at ¶ 22. This, combined with the fact that the defendant did not materially dispute the victim's account of the other acts, meant that the superior court had sufficient grounds to admit the other-acts evidence. *Id.* at 132–33, ¶¶ 22–24.

**¶19** Here, the superior court had transcripts of the confrontation call between the victim and the defendant, police interviews, and a witness interview. Moreover, the record available to this court shows that the superior court had a chance to hear allegations by the witnesses and Elkins' alternative accounts of the other acts. We also note that the allegations in the confrontation call and Elkins' defenses to these allegations reflect the testimony at trial. *See James*, 242 Ariz. at 134, ¶ 28 ("[W]e may affirm an evidentiary ruling on any basis supported by the record."). Because Elkins

failed to show a material dispute that would have required more evidence to resolve, the court did not err by declining to hold an evidentiary hearing.

**¶20** Except for the confrontation call, we do not have the other evidence the superior court considered in its other-acts evidence ruling. As the proponent, the State carried the burden to enter the other-acts evidence used into the record. *James*, 242 at 133, ¶ 25. Although the evidence was entered into the record, it was not transmitted to this court. As the party challenging the superior court's order, Elkins carried the burden to ensure that the relevant exhibits were provided to this court on appeal. *State v. Zuck*, 134 Ariz. 509, 512–13 (1982). Without the exhibits, we presume they support the superior court's ruling. *Id*.

**B. The Court Did Not Err in Its Rule 403 Findings.**

**¶21** Rule 403 dictates that relevant evidence may be excluded if the risk of unfair prejudice substantially outweighs the probative value of its admission. When a court considers the admission of other-acts evidence, Rule 404(c)(1)(C) outlines additional factors that a court must consider in making its determination under Rule 403. These factors are as follows:

> (i) remoteness of the other act[s];

> (ii) similarity or dissimilarity of the other act[s];

> (iii) the strength of the evidence that defendant committed the other act[s];

> (iv) frequency of the other acts;

> (v) surrounding circumstances;

> (vi) relevant intervening events;

> (vii) other similarities or differences;

> (viii) other relevant factors.

**¶22** Elkins does not directly challenge the superior court's factor analysis, and we find no error in it. Both the charged and uncharged acts occurred as a part of a series of frequent actions. The uncharged acts themselves were regular. Some of the uncharged acts, particularly the groping, resembled the behavior in the charged actions. The uncharged acts' circumstances reveal patterns in Elkins' behavior, particularly in his attempts to persuade Chloe that she was to blame for his efforts to groom

and isolate her. We also note the pattern of predation on Chloe whenever adult sexual partners were unavailable. Finally, Chloe testified that she did not initially report Elkins to law enforcement because she blamed herself for her past behavior. She eventually reported Elkins because her daughter was nearing Chloe's age when Elkins' predation began.

¶23         Thus, the other-acts evidence had significant probative value. Still, Elkins argues that the risk of unfair prejudice substantially outweighed the probative value of the other-acts evidence. He argues that the jury may have convicted him for the uncharged abuse allegations. We disagree.

¶24         Throughout the two-day trial, the jury was repeatedly reminded that Elkins could only be convicted for the three acts for which he was charged. On the first day of the trial, the jury heard the charges describing each act and specifying that the acts occurred in Arizona between March 1, 2001, and July 31, 2002. The State described the same three acts in its opening statement.

¶25         The next day, the jurors were provided final jury instructions, which specified that they could not convict Elkins for the crimes charged simply because they might find that he committed the past acts. In closing argument, the State reminded the jury that the trial only concerned the three charged acts. The State told the jury that these acts occurred between July 31, 2002, and March 1, 2021, in Diamond Valley and again described each charged action. Finally, when the jury asked how the standards for finding the charged and uncharged acts might relate, both counsel correctly stated the jury could not convict Elkins unless it found him guilty of the charged acts beyond a reasonable doubt, no matter if it found that Elkins committed the uncharged acts.

¶26         The jury was carefully directed, and thus the risk of confusing the jury does not outweigh the substantial probative value of the past-acts evidence. *See State v. Newell*, 212 Ariz. 389, 403, ¶ 68 (2006) ("We presume that the jurors followed the court's instructions."). This conclusion is also reinforced by the jury declining to convict Elkins on Count 1. *See State v. Herrera*, 232 Ariz. 536, ¶ 32 (App. 2013) (that jury did not find a defendant guilty of all charges suggests the verdict was not emotionally driven).

## C.    Any Erroneous Admission of Other Acts Is Harmless.

¶27         Elkins identifies no uncharged act that was inadequately supported by clear and convincing evidence. And we find none. Among the other-acts allegations, Elkins' purported massages best supported the

groping charges in Count 2. Beyond disputing their frequency, Elkins challenged these allegations only by his assertion that he was merely performing breast exams. Further, Count 3 was supported by Chloe's testimony and the audio recording of Elkins admitting that he had Chloe touch his penis. Elkins' only defense to the allegations was the explanation that he believed he was bolstering her self-esteem. Given the overwhelming evidence against him and his weak defense, any error would have been harmless beyond a reasonable doubt. *See State v. Sharp*, 193 Ariz. 414, 420, ¶ 17 (1999) (An error is harmless where the court is "satisfied beyond a reasonable doubt that evidence did not impact verdict.") (quoting *State v. Romanosky*, 162 Ariz. 217, 233 (1989)).

**CONCLUSION**

¶28        We affirm Elkins' convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8